PEOPLE v SANFORD

PEOPLE v GARDNER

Docket No. 57633. Argued May 3, 1977 (Calendar No. 4).—Decided
April 17, 1978.

Dwight Sanford and Reginald L. Gardner were convicted by a
jury in Recorder's Court of Detroit, Robert L. Evans, J., of
assault with intent to rob being unarmed. This appeal concerns
issues of the prosecutor's discretion in choosing what crime to
charge, the admissibility of evidence, and the instructions to
the jury. Defendants claim that to allow the prosecutor to
charge either the crime charged in the instant case, assault
with intent to rob unarmed, with a maximum sentence of 15
years imprisonment, or attempted robbery unarmed, with a
maximum sentence of 5 years, deprives the accused of due
process of law and the equal protection of the laws, and
subjects him to cruel and unusual punishment. The complain-
ant and a police officer testified, over objection, to circum-
stances of the complainant's identification of the defendants.
Defendants objected to instructions given to the jury on the
reliability of identification by witnesses, which were not identi-
cal to the ones they requested. The trial court failed to instruct
the jury, other than during their orientation, that the verdict
must be unanimous, but the defendants neither requested such

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 6 Am Jur 2d, Assault and Battery §§ 10, 108.

67 Am Jur 2d, Robbery § 79 *et seq.*

Attempt to commit assault as criminal offense. 79 ALR2d 597.

[3] 6 Am Jur 2d, Assault and Battery § 4.

[4] 6 Am Jur 2d, Assault and Battery §§ 2, 3.

[5] 75 Am Jur 2d, Trial § 884.

76 Am Jur 2d, Trial § 112 *et seq.*

[6] 75 Am Jur 2d, Trial §§ 576, 854–860.

[7–15] 29 Am Jur 2d, Evidence §§ 367–373.

Accused: extrajudicial or pretrial identification of accused, admissi-
bility of evidence as to. 71 ALR2d 449.

[9] 29 Am Jur 2d, Evidence §§ 493, 497.

[10–12] 29 Am Jur 2d, Evidence § 373.

[14, 15] 29 Am Jur 2d, Evidence §§ 372, 373.

an instruction nor objected to the failure to give it, and all jurors acknowledged their verdict of guilty. The Court of Appeals, Bronson, P.J., and V. J. Brennan and D. E. Holbrook, Jr., JJ., affirmed (Docket Nos. 21030, 21149). Defendants appeal. *Held:*

The convictions are affirmed.

Justice Williams, with Justices Coleman and Blair Moody, Jr., concurring, wrote:

1. Attempted robbery unarmed may be committed by simply putting a person in fear; but assault with intent to rob unarmed requires an assault with force and violence. Therefore the offenses are different and the prosecutor's discretion to charge under either statute is not unconstitutional. The Court of Appeals erred, however, in stating that the victim must be put in reasonable fear of immediate harm as an element of the crime of assault. A criminal assault may be made upon a person even though he has no knowledge of the fact at the time. A simple criminal assault is either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery.

2. Defendants received a fair trial even though the trial court did not instruct the jury on the requirement of a unanimous verdict because the jury had been substantially instructed on this requirement in their orientation and there was actually a unanimous verdict.

3. The defendants had requested a detailed cautionary instruction to the jury on the reliability and credibility of testimony concerning identification. The cautionary instruction given by the trial judge was substantially the one requested by defense counsel. Taking the charge to the jury as a whole, there was no prejudice to the defendants by the judge's failure to give the exact instruction requested.

4. Testimony of the police officer and the complainant on the circumstances surrounding the complainant's identification of the defendants prior to their arrest is not objectionable as hearsay. The officer did not testify as to the truth of the complainant's identification of the defendants but to the fact that the identification was made and the circumstances surrounding it. It is within the discretion of the trial court to admit into evidence testimony limited to the circumstances surrounding an identification of the defendant by a complainant, even though there is danger in the use of prior consistent statements in relation to identification issues.

5. The identification in the instant case was not arranged by

the police but initiated by the complaining witness who saw the defendants in a store the day after he was assaulted and called the police. There is no claim that the identification was unfair or biased, or was a denial of the defendants' constitutional rights. The testimony of the police officer was limited to the circumstances of that identification procedure, and the trial judge did not admit into evidence the identification procedure used at the preliminary examination. Therefore, the trial judge did not abuse his discretion in admitting prior consistent testimony about identification of the defendants.

Justice Ryan, joined by Justice Fitzgerald, concurring, wrote separately that under the case law at the time of trial the police officer's testimony concerning the actual identification of defendants by the complaining witness was inadmissible hearsay. The officer's testimony consisted of a repetition of the witness's words and a description of his assertive conduct when identifying the defendants which goes beyond the testimony of the circumstances surrounding an identification which was permitted under former case law. However, the testimony did not unfairly prejudice these defendants because the complaining witness and the police officer were both available at trial for cross-examination which could expose any unfairness in the setting, any hesitancy in the identification, and any inconsistency in the testimony of the complaining witness and the police officer. Furthermore, this testimony would now be admissible under the Michigan Rules of Evidence if a new trial were granted. Therefore, the error does not warrant reversal of the defendants' convictions.

Chief Justice Kavanagh and Justice Levin, concurring, agreed that attempted robbery and assault with intent to rob are distinct offenses. The recently adopted rule of evidence, MRE 801(d)(1), permits the introduction of a witness's prior statement of identification where the prior identification occurred at a time and in circumstances that make that identification more probative than in-court identification. In the instant case the police did not arrange the confrontation. It occurred by chance the day after the offense. It is clear that the victim's identification of the defendants was free of the taint of suggestive circumstances. The rule of evidence was not designed to permit testimony by persons other than the identifying witness; the question whether other persons may testify regarding a prior identification and, if so, under what circumstances, raises issues under the Confrontation Clause and has been the subject of considerable discussion. Whether the police officer's testi-

mony concerning that identification was properly admitted into evidence is not addressed because the error, if any, was harmless beyond a reasonable doubt.

The judgment of the Court of Appeals is affirmed.

65 Mich App 101; 237 NW2d 201 (1975) affirmed in part.

OPINION OF THE COURT

1. INDICTMENT AND INFORMATION—ROBBERY—ATTEMPT—ASSAULT WITH INTENT TO ROB.

Assault with intent to rob being unarmed and attempted robbery unarmed are different offenses; therefore, the discretion in a prosecuting attorney to charge a defendant under either of two statutes, assault with intent to rob being unarmed or attempted robbery unarmed, does not deprive the accused of due process of law and the equal protection of the laws, or subject him to cruel and unusual punishment, even though the statutes prescribe a maximum sentence of 15 years imprisonment for the former offense and 5 years for the latter (MCL 750.88, 750.92, 750.530; MSA 28.283, 28.287, 28.798).

2. ROBBERY—ATTEMPT—ASSAULT WITH INTENT TO ROB—ELEMENTS OF CRIME.

Attempted robbery unarmed may be committed by simply putting a person in fear; but assault with intent to rob unarmed requires an assault with force and violence (MCL 750.88, 750.92, 750.530; MSA 28.283, 28.287, 28.798).

3. ASSAULT—ELEMENTS OF CRIME.

The crime of assault does not necessarily include, as an element, a requirement that the victim be put in reasonable fear of immediate harm (MCL 750.81; MSA 28.276).

4. ASSAULT—WORDS AND PHRASES.

A simple criminal assault is either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery (MCL 750.81; MSA 28.276).

5. CRIMINAL LAW—INSTRUCTIONS TO JURY—UNANIMOUS VERDICT.

A defendant received a fair trial, even though the trial court did not instruct the jury on the requirement of a unanimous verdict, where the jury was substantially instructed on the requirement during their orientation and there was in fact a unanimous verdict.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—WITNESSES—CREDIBILITY—
   IDENTIFICATION.

> There was no prejudice to a defendant in a trial court's failure to
> give a detailed cautionary instruction to the jury on the relia-
> bility or credibility of testimony concerning identification ex-
> actly as requested where the cautionary instruction given by
> the trial judge, taken as a whole, was substantially the one
> requested by defense counsel.

7. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—HEARSAY—IDENTIFICA-
   TION—CIRCUMSTANCES.

> *Testimony of a third party limited to the circumstances surround-*
> *ing an out-of-court identification of a defendant by the com-*
> *plaining witness is not hearsay and may be admitted into*
> *evidence, in the discretion of the trial court, subject to such*
> *considerations as whether the identification procedures were*
> *unfair, biased, or a violation of the constitutional rights of the*
> *accused.*

8. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—IDENTIFICATION—CIR-
   CUMSTANCES—PRIOR CONSISTENT STATEMENT.

> *Admission of testimony limited to the circumstances surrounding*
> *an identification of the defendant by a complainant is within*
> *the discretion of the trial court, even though there is danger in*
> *the use of prior consistent statements in relation to identifica-*
> *tion issues.*

9. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—HEARSAY—WORDS AND
   PHRASES.

> *Hearsay is a statement, other than one made by the declarant at*
> *a trial or hearing, offered in evidence to prove the truth of the*
> *matter asserted; therefore, testimony of a police officer, which*
> *was offered to show that he had seen the circumstances of an*
> *out-of-court identification of a defendant by a complainant and*
> *not to prove the truth of the identification, was not hearsay.*

10. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—IDENTIFICATION—
    PRIOR CONSISTENT STATEMENT.

> *Testimony by a police officer who was present at an out-of-court*
> *identification of defendants by the complainant, which was not*
> *arranged by the police but initiated by the complainant who*
> *saw the defendants in a store the day after he was assaulted*
> *and called the police, was properly admitted in a trial for*
> *assault in the court's discretion where there is no claim that*
> *the identification was unfair, biased, or a denial of the defend-*
> *ants' constitutional rights, the testimony was limited to the*

*circumstances of the identification procedure, and the testimony of the identification procedure used at the preliminary examination was not admitted.*

CONCURRING OPINION BY RYAN, J.

FITZGERALD, J.

11. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—HEARSAY—IDENTIFICATION—CIRCUMSTANCES.

*The testimony of a third party concerning an extrajudicial identification of a defendant by the complaining witness was admissible under former case law only insofar as such testimony was offered to prove the circumstances surrounding the identification, providing the circumstances had independent relevance to the issues in the case.*

12. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—HEARSAY—IDENTIFICATION.

*Admission into evidence of hearsay testimony by a police officer concerning the complaining witness's out-of-court identification of the defendants was not reversible error where both the police officer and the complaining witness testified at trial and were subject to cross-examination so that the defendants were not unfairly prejudiced by the testimony; furthermore, ordering a new trial would be an empty gesture where the evidence would be admissible under the new rules of evidence if a new trial were granted (MRE 801[d][1]).*

CONCURRING OPINION BY KAVANAGH, C.J., and LEVIN, J.

See headnote 1.

13. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—HEARSAY—IDENTIFICATION.

*The rules of evidence permit the introduction of a witness's prior statement of identification when the prior identification occurred at a time and in circumstances that make that identification more probative than in-court identification (MRE 801[d][1]).*

14. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—HEARSAY—IDENTIFICATION.

*Testimony by an identifying witness of his prior out-of-court statement of identification of the defendant to police is properly admissible into evidence where the police did not arrange the confrontation which occurred by chance the day after the*

*offense and the witness's identification was free of the taint of suggestive circumstances (MRE 801[d][1]).*

15. Criminal Law—Evidence—Admissibility—Hearsay—Identification.

*Whether persons other than the identifying witness may testify regarding a prior identification by the identifying witness raises issues under the confrontation clause; however, the error, if any, in admitting into evidence testimony by a police officer concerning the complaining witness's identification of the defendants was harmless beyond a reasonable doubt where the defendants did not offer any evidence to dispute the identification, and the officer's testimony did not tend to influence the jury's resolution of a disputed issue (MRE 801[d][1]).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Research, Training & Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba* for defendants.

Williams, J.

## Introduction

This case concerns an attack upon Mr. Anderson, the complaining witness, by three men. The day after the attack Mr. Anderson called the police to inform them that he had seen his attackers. The police then accompanied Mr. Anderson to a poolroom where he pointed out the defendants. At trial Mr. Anderson and a police officer were permitted, over objection, to testify to the circumstances of the poolroom identification. The Court of Appeals found no reversible error. We agree.

At the conclusion of the trial, defense counsel requested special jury instructions on reliability of witness identification testimony. The trial judge

did not give the exact instructions requested but gave substantially similar ones. Defense counsel, who expected not to be present during the giving of the instructions had previously made an objection if the requested instructions were not given. The Court of Appeals found no reversible error. We agree.

The trial judge failed to instruct the jury that their verdict must be unanimous. The jury was instructed on the requirement of unanimity during their orientation. The record reveals that all jurors acknowledged that they agreed on the verdict. Defense counsel neither requested an instruction on unanimity nor objected to the trial judge's failure to give it. The Court of Appeals found no reversible error. We agree.

Before the Court of Appeals defense counsel alleged a violation of defendants' right to due process and equal protection. Defendants were convicted of assault with intent to rob not armed, MCLA 750.88; MSA 28.283 which carries a 15-year maximum sentence, and sentenced to 2 to 15 years imprisonment. Defense counsel contends attempted robbery unarmed, MCLA 750.530; MSA 28.798 and MCLA 750.92; MSA 28.287 is an identical offense with a five-year maximum sentence. Therefore he alleges defendants' rights were violated because of the discretion given to the prosecutor to charge either offense when both are identical. The Court of Appeals found the statutes prohibited different offenses and therefore were not identical. We agree the statutes are not identical, but for reasons different from the Court of Appeals. Affirmed.

I—THE FACTS

Dwight Sanford and Reginald Lee Gardner were

charged in a one-count information with the commission of the offense of assault with intent to rob being unarmed, MCLA 750.88; MSA 28.283.

The complainant, Booker Anderson, testified that on February 26, 1974 at about 5:45 p.m. he went to the Sherman Drug Store near Owen and Oakland in the City of Detroit. When he returned to his car and was unlocking the door someone grabbed him. Two persons hit him on the side of the head and tried to throw him down. They tried to get into his pocket and said that there was money in the pocket. A third person came and grabbed him and he was dragged to an alley and the culprits kept saying there was money in the pocket. Then they broke and ran. The culprits got nothing.

At trial Mr. Anderson identified defendants Gardner and Sanford as two of the men who attacked him. Mr. Anderson testified he had one false eye and his glasses were broken in the struggle. He also testified he had never seen the defendants before that day, but he had seen them in the drug store when he walked into the drug store.

Mr. Anderson also testified on direct examination to having identified the defendants the day after the attack. Mr. Anderson saw the defendants in the same drug store and called the police. By the time the police arrived defendants were in a poolroom. The police joined Mr. Anderson at the poolroom. Mr. Anderson then pointed the defendants out to the police. The relevant portions of that testimony follow:

"*Q. (By Mr. Morgan [prosecuting attorney]):* Okay. Now, the next day, Mr. Anderson, February 27, did you have occasion to go back to the drug store?

"*A.* I went back to the drug store.

"*Mr. Ziemba [defense counsel]:* Objection. This is entirely irrelevant, your Honor.

"*The Court:* Overruled.

"*Mr. Ziemba:* Thank you.

"*Q. (By Mr. Morgan):* Would that be in the afternoon some time?

"*A.* Yes. I went back to the drug store, and I saw them come in the drug store.

"*Q.* Who came in the drug store?

"*A.* Those two here.

"*Mr. Ziemba:* May I have a continuing line of this question? *[sic].*

"*The Court:* Yes.

"*Mr. Ziemba:* Thank you.

"*Q. (By Mr. Morgan):* You saw Mr. Gardner and Mr. Sanford?

"*A.* That's right.

"*Q.* Did they do anything in the drug store?

"*A.* They got a pack of cigarettes, I think, and walked out.

"*Q.* Okay. What did you do next, sir?

"*A.* I called a policeman.

"*Q.* Did some police officers come?

"*A.* That's right.

"*Q.* What did you do next?

"*A.* When I called the police, they circled around up and down Owen and Oakland, and then went in the poolroom.

* * *

"*Q.* After the police went into the billiard room, what did you do, sir?

"*A.* I went in there, too.

"*Q.* What did you do next?

"*A.* They was standing around there looking.

"*Q.* Who do you mean, they?

"*A.* They was looking, the police, and I pointed him out and him out because them was the ones who robbed me.

"*Q.* You pointed Mr. Gardner and Mr. Sanford out?

"*A.* That's right.

"*Q.* What were they doing in the poolroom?

"*A.* He was playing pool.

"*Q.* Mr. Sanford?

"*A.* Yes, and he was playing checkers.

"*Q.* Were there any other people in the poolroom?

"*A.* Yes, about 15 to 16 people, something like that.

"*Q.* Mr. Anderson, did you testify at a prior hearing in this matter?

"*A.* I [sure] did.

"*Q.* At that particular time, did you have occasion to identify the defendants?

"*Mr. Ziemba:* I object to this. This is highly objectionable.

"*The Court:* Objection sustained.

"*Mr. Ziemba:* I ask that the answer *[sic]* be stricken and the jury be instructed to disregard the answer *[sic]*.

"*Mr. Morgan:* Your Honor, may we approach the bench?

"*The Court:* Yes.

(Whereupon a discussion was held off the record.)

"*Q. (By Mr. Morgan):* Mr. Anderson, is there any doubt in your mind that these are two of the men who attempted to rob you on February 26?

"*A.* That's right. That's the two right there."


The trial judge did not permit Mr. Anderson to testify to the identification procedure used for the preliminary examination. At the preliminary examination, at the request of the defense counsel, the complainant was excused from the courtroom and the defendants were seated in the audience. The complainant then entered the courtroom and took the witness stand. He was asked to identify the men who assaulted him, and identified defendants in the audience.

A police officer, over objection, confirmed complainant's testimony concerning the identification

made February 27, 1974 in the poolroom. After this testimony the parties rested.

At the close of the trial defense counsel requested, in writing, a special instruction on the reliability of witness identification testimony. The trial judge gave an instruction which was substantially similar.

The court did not instruct the jury that their verdict had to be unanimous. Defense counsel neither requested such an instruction nor objected to the trial judge's failure to give it. The record reveals that the jury was instructed on the unanimity requirement during their orientation in the following manner:

"Again, for 12 people or 6 people to reach a unanimous decision in a criminal trial is a difficult thing; and you have to listen to the opinions of each of your fellow jurors."

The record also reveals,

"that all the jurors acknowledged to the trial judge that they agreed on the verdict". *People v Sanford,* 65 Mich App 101, 106; 237 NW2d 201 (1975).

The jury convicted the defendants of assault with intent to rob unarmed. Both defendants received prison sentences of 2 to 15 years.

The Court of Appeals affirmed defendants' convictions in *People v Sanford,* 65 Mich App 101; 237 NW2d 201 (1975).

We granted leave to appeal on the issues raised in defendants' application, the four discussed above. We affirm defendants' convictions, but on issue I for reasons different from the Court of Appeals.

## II—Comparison of Two Criminal Statutes

The defendants contend the offense defined in MCLA 750.88; MSA 28.283, assault with intent to rob being not armed is identical to the offense of attempted robbery unarmed, defined in MCLA 750.530; MSA 28.798 and MCLA 750.92; MSA 28.287.

The Court of Appeals in discussing defendants' first issue stated:

"Defendants next contend that the crime they were convicted of, assault with intent to rob being unarmed, is the same offense as attempted unarmed robbery. They contend that since assault with intent to rob being unarmed carries only a 15-year maximum sentence, and attempted unarmed robbery carries only a 5-year maximum, it is a denial of equal protection to have two statutes, with different penalties, prohibiting the same conduct. We disagree with defendants' theory that the two statutes are aimed at prohibiting the same conduct." 65 Mich App 101, 103.

MCLA 750.88; MSA 28.283 provides:

"Assault with intent to rob and steal being unarmed —Any person, not being armed with a dangerous weapon, *who shall assault another with force and violence,* and with intent to rob and steal, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 15 years." (Emphasis added.)

MCLA 750.530; MSA 28.798 provides:

"Robbery unarmed—Any person *who shall, by force and violence, or by assault or putting in fear,* feloniously rob, steal and take from the person of another, or in his presence, any money or other property which may be the subject of larceny, such robber not being armed with a dangerous weapon, shall be guilty of a

felony, punishable by imprisonment in the state prison not more than 15 years." (Emphasis added.)

MCLA 750.92; MSA 28.287 provides:

"Attempt to commit crime—Any person who shall attempt to commit an offense prohibited by law, and in such attempt shall do any act towards the commission of such offense, but shall fail in the perpetration, or shall be intercepted or prevented in the execution of the same, when no express provision is made by law for the punishment of such attempt, shall be punished as follows:

* * *

"2. If the offense so attempted to be committed is punishable by imprisonment in the state prison for life, or for 5 years or more, the person convicted of such attempt shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or in the county jail not more than 1 year."

Defendants were convicted under MCLA 750.88; MSA 28.283, the statute with the greater penalty, and sentenced to terms of not less than 2 nor more than 15 years imprisonment. They allege that their convictions were violative of due process and equal protection under the laws of the Fifth Amendment and Fourteenth Amendment to the United States Constitution and under Const 1963, art 1, § 17, because identical crimes are given different statutory penalties.

The assault with intent to rob unarmed statute is conjunctive; there must be an assault with force and violence. The attempted robbery unarmed statute is disjunctive; the offense can be accomplished either by force and violence, or by assault, or putting in fear. Attempted robbery unarmed may therefore be committed simply by putting someone in fear while assault with intent to rob

unarmed requires an assault with force and violence. Therefore the offenses, assault with intent to rob unarmed and attempted robbery unarmed, are different.[1]

We affirm the result of the Court of Appeals on this issue.

### III—DEFINITION OF CRIMINAL ASSAULT

Although we affirm the Court of Appeals result on the above issue we disagree with their definition of "criminal assault".

The Court of Appeals said:

"Michigan criminal law, however, defines a criminal

---

[1] The essential elements of assault with intent to rob being unarmed are (1) an assault with force and violence, (2) an intent to rob and steal, and (3) defendant being unarmed. The crime necessarily requires an assault and the requisite intent, but not necessarily the taking.

The essential elements of an attempted unarmed robbery are (1) an attempted felonious taking of property from the person of another or in his presence, (2) by force and violence or by assault or by putting in fear, and (3) defendant being unarmed.

An assault with intent to rob being unarmed necessarily involves an attempt or offer to do corporal injury, with the present intention and *present ability* to carry out the offer. In other words, there *must* be a criminally assaultive act.

Attempted unarmed robbery may or may not include a criminal assault. An attempted unarmed robbery may also be accomplished by force and violence or by putting in fear. Attempted unarmed robbery does not necessarily require an assault. Therefore, it is obvious that the defendant need not possess the *present* ability to carry out the offer.

Therein lies what we believe to be the policy rationale for attaching a 15-year maximum sentence to assault with intent to rob being unarmed while requiring only a 5-year maximum sentence for attempted unarmed robbery.

An assault with intent to rob being unarmed necessarily involves an offer to do injury with the present ability to carry out that offer. Hence, the crime is always more dangerous vis-à-vis potential victims.

Attempted unarmed robbery does not necessarily require an assault so, by definition, the present ability to carry out the offer need not exist. Hence, under certain circumstances, that crime is less dangerous vis-à-vis the possibility of actual bodily harm to the victims.

assault as any intentional, unlawful offer of violence to another with the apparent present ability to carry out the offer, *creating a reasonable fear of immediate injury. People v Carlson,* 160 Mich 426; 125 NW 361 (1910), *Tinkler v Richter,* 295 Mich 396; 295 NW 201 (1940); but see *People v Syakovich,* 32 Mich App 356; 188 NW2d 642 (1971). *An "assault" requires that the victim be put in reasonable fear of immediate harm;* 'force and violence' does not. A person may be 'forcefully and violently' attacked and robbed while never even seeing his assailant. The same person may not, however, be 'assaulted' unless he perceives the danger. Because MCLA 750.88; MSA 28.283 requires an assault as an element, and because MCLA 750.530; MSA 28.798 requires either an assault or force and violence, the two statutes prohibit different crimes. The prosecutor properly has the discretion to charge defendants under either statute. *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672; 194 NW2d 693 (1972)." 65 Mich App 101, 105 (emphasis added).

In short the Court of Appeals defines criminal assault to include a requirement that "the victim be put in reasonable fear of immediate harm". That has not been the law of Michigan nor do we believe it to be the preferable policy.

A general definition of criminal assault is found in 2 Michigan Law & Practice, Assault and Battery, § 31, which reads as follows:

"A criminal assault is an attempt or offer to do corporal injury, with a present intention and ability."

*People v Doud,* 223 Mich 120, 123; 193 NW 884 (1923), offers the following definition:

"An assault, under practically all definitions, must carry on the face of its attendant circumstances an offer or attempt with force or violence to do a corporal hurt to another."

*People v Sheffield,* 105 Mich 117, 118–119; 63 NW 65 (1895), defined assault in almost identical words:

"An assault involves 'every attempt or offer, with force and violence, to do a corporal hurt to another.' "

It will be noted that none of these definitions include the Court of Appeals requirement of "reasonable fear of immediate harm". One earlier case, *People v Lilley,* 43 Mich 521; 5 NW 982 (1880), specifically rejected that requirement in the following words:

"What then constitutes an assault in law? It might be somewhat difficult to reconcile all the authorities upon this subject, and we shall not attempt it. Some of the tests, as putting the person assaulted in fear, cannot be relied upon, *as evidently an assault may be made upon a person, even although he had no knowledge of the fact at the time.*

"An assault is defined to be an inchoate violence to the person of another, with the present means of carrying the intent into effect. Threats are not sufficient; there must be proof of violence actually offered, and this within such a distance as that harm might ensue if the party was not prevented." 43 Mich 521, 525–526 (emphasis added).

In deriving its definition of assault, as the earlier quotation from its opinion indicates, the Court of Appeals relied on two Supreme Court cases. It acknowledged that an earlier Court of Appeals case, *People v Syakovich,* 32 Mich App 356, 357; 188 NW2d 642 (1971), had adopted a contrary interpretation.

What warrant, then, do the two cited Supreme Court cases give the Court of Appeals to reach its decision? *Tinkler v Richter,* 295 Mich 396; 295 NW

201 (1940), is a civil case. Traditionally, "the word 'assault' represented an entirely different concept in criminal law than it did in the law of torts". Perkins on Criminal Law (2d ed), Assault, p 114. As a consequence, dependence on a civil law definition gives little support to the Court of Appeals position.

The other case the Court of Appeals relied on, *People v Carlson,* 160 Mich 426; 125 NW 361 (1910), gives ambiguous support to the Court of Appeals. The pertinent language from that case follows:

"There are numerous definitions of what constitutes an assault given by courts and textwriters. We cite two, which, taken together, may be said to include all necessary elements:

"'An assault is any attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness, with such circumstances as denote, at the time, an intention to do it, coupled with a present ability to carry such intention into effect.' 3 Cyc, p 1020.

"'An assault is any unlawful physical force, partly or fully put in motion, creating a reasonable apprehension of immediate injury to a human being.' 2 Bishop on Criminal Law (7th ed), § 23." 160 Mich 426, 429.

While the introductory language presenting the definitions of the two treatises, "We cite two, which taken together, may be said to include all the necessary elements" is susceptible to the conjunctive interpretation given by the Court of Appeals in this case making the Bishop definition a necessary element along with the Cyclopedia definition, a disjunctive interpretation is also possible, namely that either the Bishop or the Cyclopedia definition is sufficient alone. The facts in *Carlson* do not establish either the conjunctive or the

disjunctive interpretation because the record disclosed facts that would satisfy either or both definitions.

It may be of some significance that while *Carlson* has been cited in a subsequent Michigan case, *People v Doud,* 223 Mich 120, 123, 125, the requirement "that the victim be put in reasonable fear of immediate harm" was not mentioned in case law until the Court of Appeals mentioned it in this case, while, on the other hand, *Carlson* did quote *Lilley* on how much action is necessary to create an assault without any comment on the fact that *Lilley* had held a person could be assaulted, "although he had no knowledge of the fact at the time" and hence no fear.

As a consequence of this history of the Michigan cases and the fact that, as Perkins on Criminal Law (2d ed), pp 116–117 says:

"[T]here has been a tendency in many [jurisdictions] to add the tort liability theory as an additional ground. Where the tort theory has been added, a simple criminal assault 'is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery,' "

we prefer to read *Carlson* as quoting Bishop as an alternate or additional definition of assault rather than as a required element in every definition of assault. We are fortified in this conclusion by the fact that Bishop said that fear was not a *sine qua non* for assault. 2 Bishop on Criminal Law (9th ed), § 33, reads as follows:

"§ 33.1. Injury without Fear—Actual fear, created in the mind of the assailed person, while doubtless in proper circumstances it may be an element in assault,

*is not always and as of course necessary."* (Emphasis added.)

See also 2 Burdick, Law of Crime, § 339, p 3; *Commonwealth v Slaney,* 345 Mass 135, 139; 185 NE2d 919, 922 (1962), which says the Bishop requirement that fear be an element has been much criticized and that "in this Commonwealth neither fear, nor terror nor apprehension of harm is an essential ingredient of the common law crime of assault".

In conclusion, we hold that the Court of Appeals definition of assault in this case is incorrect and we specifically overrule it. We adopt what Perkins on Criminal Law (2d ed), p 117, says is the majority rule, namely "a simple criminal assault 'is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery' ". We also hold that either the Cyclopedia or the Bishop definition in *Carlson* is an adequate definition of a form of assault and that both forms are actionable in the criminal law.

## IV—UNANIMOUS VERDICT

Defendants' second issue on appeal is whether the failure of the trial judge to instruct the jury that their verdict must be unanimous requires reversal. The Court of Appeals stated:

"Defense counsel, who is also counsel on appeal, neither requested such an instruction nor objected to the trial judge's failure to give it. Under these circumstances, we would reverse only to prevent a miscarriage of justice. See *People v Fry,* 55 Mich App 18; 222 NW2d 14 (1974); GCR 1963, 516.2. Since the record in this case reveals that the jury was instructed on the unanimity requirement during their orientation, and that all the

jurors acknowledged to the trial judge that they agreed on the verdict, we find no miscarriage of justice." 65 Mich App 101, 105–106.

We agree that the convictions should not be reversed for this failure, but for reasons similar to those stated in the concurrence in *People v Burden,* 395 Mich 462, 469–470; 236 NW2d 505 (1975).

In the concurrence in *Burden* we examined the situation to determine if there were sufficient factors present to show that the jury had been substantially instructed as to the need for unanimity and that the verdict, in fact, had been unanimous. We apply the same analysis to this case.

First, the jury was advised of the requirement of a unanimous verdict during their orientation. They were informed as follows:

"Again, for 12 people or 6 people to reach a unanimous decision in a criminal trial is a difficult thing; and you have to listen to the opinions of each of your fellow jurors."

Although the trial judge should instruct a jury in a criminal case that their verdict must be unanimous, in view of the circumstances, this language is adequate to advise the jury of their obligation to reach a unanimous verdict.

Second, as noted by the Court of Appeals "all the jurors acknowledged to the trial judge that they agreed on the verdict". 65 Mich App 101, 106. There was actually a unanimous verdict.

It is these factors which lead us to conclude that defendants received a fair trial, even though no instruction was given to the jury by the trial court on the requirement of a unanimous verdict.

## V—IDENTIFICATION INSTRUCTIONS

On the issue of jury instructions on identification the Court of Appeals ruled:

"The failure of the trial judge to give defendants' requested identification instruction was not erroneous, as the judge did give an instruction that was substantially similar to the one requested." 65 Mich App 101, 106.

We agree with the conclusion of the Court of Appeals.

Without the entire requested charge (page one is now missing) it is difficult to assess how far the trial judge deviated from the requested charge. Yet, defense counsel's oral request and page two of his written request provide us with the general nature of the instruction he requested.

At the close of the trial defense counsel requested a special instruction on witness identification stating:

"the only one [instruction] I would anticipate asking the court would be an instruction to the effect that testimony as to the identification of a defendant by complainant who admits never having known that person before the criminal encounter, is at best an opinion and not a statement of fact and that it must be approached with great care and weighed very carefully by the jury."

Defense counsel submitted an instruction in writing on the point mentioned. The second page reads as follows:

"You must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful and consider whether

he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

"I emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty.

"*United States v Telfaire,* 152 US App DC 146; 469 F2d 552 (1972), *United States v Barber,* 442 F2d 517 (CA 3, 1971), *United States v Edward,* 439 F2d 150 (CA 3, 1971)."

After submitting the request defense counsel stated:

"The request is broadly to the effect that testimony as to identification by a witness who had never seen the person identified before the alleged offense was an expression of belief by that witness.

"I most respectfully ask the court to give that instruction, as submitted to the court, to the jury.

"If the court decides not to give that instruction, I would at this time voice an expressed objection to the court's instruction as being inadequate."

It is clear that defendants wanted a detailed instruction on the reliability and credibility of identification witness testimony, including the fact that such testimony is at best an opinion and not a statement of fact and that it must be approached with great care and weighed very carefully by the jury.

A review of the instruction on witness identification given by the trial judge reveals substantially the same type of instruction that was requested by defense counsel. The trial judge said:

"The third element then has to do with identity. Then, the question is whether or not there is proof beyond a reasonable doubt that these two defendants were the persons who in fact assaulted Mr. Booker Anderson with the intent to rob him. The defendants, Mr. Gardner and Mr. Sanford, are alleged to be the two persons who participated in this offense.

"I charge you as a matter of law that identification is often an expression or *[sic]* the belief of the witness and, of course, you jurors are not obligated to take the expression or *[sic]* the belief of the complaining witness in this case and adopt it as your own.

"In this case you must, in order to determine whether or not the defendants each of them or either of them assaulted Mr. Anderson, intending to rob him, you must look at the opportunity they *[sic]* may have had, to make the observation and the other facts and circumstances which convinces you as to the identification.

"You may take the testimony of Mr. Booker Anderson. And, if it seems reasonable and creditable, adopt it, as any other facts about which testimony has been given in the case. Or, you may take that testimony as it relates to that or any other facts in this case and examine it carefully as to whether or not it has been proven to the third element [identification]."

Again, at the end of the charge to the jury, the trial judge instructed the jury on witness testimony. The trial judge said:

"In this case as in any other case, ladies and gentlemen, the determination you will be making is to give the credibility of the witnesses. You as jurors have the sole judgment. You have the right to consider certain characteristics of the witnesses and the manner in which they testify before you.

"If in the event there is a conflict of testimony of one witness, you are not bound to that testimony which seems unreasonable with other facts in the case. You should not reject the testimony of one witness without reason. You may accept the testimony of the witness

[not] withstanding. You may also disregard the testimony entirely of that witness, if there is misrepresentation, in your own objection *[sic]*."

Taking the jury charge as a whole we can find no prejudice to the defendants due to the trial judge's failure to give the exact instruction requested.

## VI—PRIOR IDENTIFICATION

Defendants contend it was error "for the trial judge to permit, over objection, testimony by the complainant and by a police officer as to the circumstances of defendants' arrests", because it was "irrelevant" and "merely gratuitously bolstered complainant's in-court identification by * * * hearsay". The Court of Appeals stated that after reviewing the issue "discussion is without merit". 65 Mich App 101, 106.

We find the question to be whether, over objection, the trial judge should permit testimony concerning an extrajudicial identification by the witness who made the identification and/or by a third party, in this instance a police officer, who witnessed the identification. The problem is whether such testimony is hearsay and if so whether there is an exception which would allow one or both witnesses to testify.

There is a split among the jurisdictions on this question.[2] In *Gilbert v California,* 388 US 263, 272–273, fn 3; 87 S Ct 1951; 18 L Ed 2d 1178 (1967), the United States Supreme Court did not distinguish the two types of testimony and observed:

"There is a split among the States concerning the

---

[2] 71 ALR2d 449, § 7, Testimony of identifier, p 460; § 13, Testimony of third person, p 482.

admissibility of prior extrajudicial identifications, as independent evidence of identity, both by the witness and third parties present at the prior identification. See 71 ALR 2d 449. It has been held that the prior identification is hearsay, and, when admitted through the testimony of the identifier, is merely a prior consistent statement. The recent trend, however, is to admit the prior identification under the exception that admits as substantive evidence a prior communication by a witness who is available for cross-examination at trial. See 5 ALR 2d Later Case Service 1225–1228."

We agree with the position taken in the Federal Rules of Evidence, which removes the testimony of the identifier from the hearsay category. The Federal Rule of Evidence 801(d)(1)(C) states:

"Rule 801. Definitions
"The following definitions apply under this article:

\*    \*    \*

"(d) Statements which are not hearsay. A statement is not hearsay if—
"(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is \* \* \* (C) one of identification of a person made after perceiving him."

We find that the testimony of the third party limited to the circumstances surrounding the identification is not objectionable as hearsay and is admissible at the discretion of the trial judge subject to such considerations as whether the identification procedures were unfair, biased, or a violation of the accused's constitutional rights.

*A. Testimony by the Identifier.*

Objections to this type of testimony have usually

been based either on its character as hearsay or on the theory that it amounts to impermissible bolstering of the victim's testimony by a prior consistent statement. In my concurring opinion in *People v Poe,* 388 Mich 611; 202 NW2d 320 (1972), the importance of such testimony was noted:

"This case strongly highlights a psychological and legal problem deserving the most serious consideration of the bench and bar. In reading the record and my Brother ADAM's *[sic]* opinion, one cannot escape the emphasis on what the witnesses at pretrial identification said and did. Such matters as whether or not an identifying witness did or did not identify the defendant; whether the identifying witness identified another person; whether the identification was 'positive' or 'hesitant'; what the identifying witness said; what the police records of the lineup do or do not show; etc., all are heavily stressed. And no wonder, because punishment or discharge depends on whether the jury finds beyond a reasonable doubt that the witnesses identified the 'right' man.

\* \* \*

"From this emphasis on what happened and what was said at the pretrial identification procedures it is apparent that both parties thought the jury would be influenced by identifying witness' impressions at the time nearest the crime. This actually is logically and psychologically sound. An important consideration underlining my concurrence in this case is the proposition that, all things being *equal,* identifications made prior to trial are inherently more reliable than those made 'in court' ('That's the man'). Wigmore has characterized in-court identifications as 'violently suggestive.' Wigmore, *Evidence—Corroboration by Witness' Identification of an Accused on Arrest,* 25 Ill L Rev 550, 550–551 (1931); see also 4 Wigmore, Evidence (3d ed), § 1130; Comment, *Prior Identification Evidence & the Hearsay Objection,* 30 Rocky Mt L Rev 332 (1958); Wall, Eye-Witness Identification in Criminal Cases, pp 26–27, 181 fn 2, and Chapter V (1971, 2d printing). However, in *Gilbert v*

*California,* 388 US 263; 87 S Ct 1951; 18 L Ed 2d 1178 (1967), the United States Supreme Court made testimony as to pretrial identification procedures subject to *per se* exclusion if the defendant was without counsel. *Kirby, supra [Kirby v Illinois,* 406 US 682; 92 S Ct 1877; 32 L Ed 2d 411 (1972)], restricted this *per se* exclusion to post-'indictment' situations. This writer believes that the *per se* exclusionary rule should be *eliminated entirely* and an appropriate rule of special qualification of such evidence on the basis of the fairness of the procedures substituted." 388 Mich 611, 623–625.

The Federal system adopted such a rule by enacting the Federal Rules of Evidence, Rule 801(d)(1)(C), *supra.*

This Court's most direct pronouncement on the subject was made in conclusory fashion in *People v Londe,* 230 Mich 484; 203 NW 93 (1925). There the Court said:

"It was proper for the witnesses who had seen the men at the time of the robbery to testify that they later identified the defendant as one of them. And it was equally proper for the officer to testify under what circumstances the identification was made. That is as far as the witnesses were allowed to go in giving their testimony. Counsel's objection is without merit. It does not require further discussion." 230 Mich 484, 487.

Therefore, a literal interpretation of *Londe* would make the testimony concerning the prior identification by the declarant admissible, if the extrajudicial identification was fair. This is consistent with the Federal Rules of Evidence 801(d)(1)(C) and our own proposed Michigan Rule of Evidence 801(d)(1)(C),[3] which is identical to the Federal Rule. 399 Mich 1002.

---

[3] After this opinion was written but before it was signed this Court adopted the Michigan Rules of Evidence including MRE 801(d)(1) which now reads as follows:

"(d) Statements which are not hearsay. A statement is not hearsay if—

In this case, we are not dealing with the traditional pre-trial line-up, arranged by the police once the suspect is in custody, but a situation where the complaining witness initiated the identification process. Mr. Anderson observed the defendants in a store the day after he was attacked. After observing the defendants, Mr. Anderson called the police and upon their arrival pointed out the defendants, who by then were in a poolroom. There is no suggestion that the identification was unfair, biased or a denial of the defendants' constitutional rights.[4] Surely, so close to the time of the crime this identification had more probative value than one at trial some months later.

"(1) Prior statement of witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is one of identification of a person made after perceiving him; or".

It should be noted that our rule MRE 801(d)(1), which is in accord with the Federal Rules of Evidence 801(d)(1)(C), is consistent

"with '[t]he recent trend * * * to admit the prior identification under the exception that admits as substantive evidence a prior communication by a witness who is available for cross-examination at trial.' The New Jersey and California codifications are to the same effect and New York reached this result by judicial construction. Although there was conflicting authority within the federal jurisdictions prior to the adoption of the federal rules, a number of circuits had been moving in this direction." 4 Weinstein, Evidence, ¶ 801, p 801–104.

We believe the rule of our case is not inconsistent with our MRE 801(d)(1). We further believe an analysis, on a case by case basis, should be made to determine whether the prior identification should be near in time and if so how near in time to the transaction involving the person to be identified; and also whether any prior identification regardless of its relation to the time of the critical transaction and date of testifying at the trial of case, should be admitted.

[4] See 4 Weinstein, Evidence, ¶ 801, p 801–106.

A prior identification may

"be suspiciously unreliable. The 'recent trend' in identification cases is a two-pronged affair. It recognizes that unreliability is not due to the lack of cross-examination at the time the statement is made—the principal danger against which the hearsay rule protects—but rather is due to the procedures by which the pre-trial identification is elicited".

Under the law as expressed in *Londe,* and our proposed Michigan Rule of Evidence 801(d)(1)(C), testimony of Mr. Anderson concerning his extrajudicial identification of the defendants is not hearsay. It is a special type of prior consistent statement which is not subject to the usual requirement that it be used solely to rebut a charge of recent fabrication or improper influence or motive and is admissible.

## B. Testimony of Third Party.

Our case law and that of other jurisdictions do not present a clear case for admission of this type of testimony. While most jurisdictions admit the testimony of the identifier as to an extrajudicial identification, most jurisdictions do not admit the testimony of a third party to an extrajudicial identification, except in limited circumstances.[5] The objections to the testimony of the third party are generally the same as those to the testimony of the identifier: its character as hearsay or that it amounts to a bolstering of the identifier's testimony. Where admitted, such testimony has usually been limited to (1) rebuttal of testimony tending to impeach or discredit the testimony of the identifying witness or (2) testimony of the circumstances surrounding the identification.

This Court spoke on the admissibility of such testimony in *Londe,* and allowed the testimony of a police officer as to the circumstances under which the identification was made.

In *Poe,* although the police officer's testimony and handwritten notes concerning the pretrial identification were held inadmissible hearsay, we acknowledged the rule in *Londe,* and said:

[5] 71 ALR2d 449, § 13, Testimony of third person.

"*Londe* restricts the police officer's testimony to 'what took place' and under 'what circumstances the identification was made' and not, as here, the nature or quality of the identification." 388 Mich 611, 618.

In *Poe,* the facts indicated that the pretrial identification procedures, arranged by the police, were arguably unfair. This Court said:

"The witnesses were shown a number of police mug shots the night of the holdup and again the next morning. Defendant's photo was in both groups. This would be within standard and proper identification procedures. However, two of the witnesses recalled having been shown photos on the day of the showup and Fannie Evans stated that when she went to the police station for the showup, she was permitted to see defendant before the showup. 'I really didn't look at the others [in the showup] because I saw him [defendant] before I even got there and I recognized him.' When Gary Harbin viewed defendant at a showup, men used for it, besides the 32-year old defendant, were two teenagers and a 58-year old man." 388 Mich 611, 616.

This Court concluded that:

"In this case, however, we have identification procedures prior to trial that are at least open to the suspicion of unfairness." 388 Mich 611, 619.

In this case there is no suspicion that the identification of defendants by the complaining witness was unfair. Mr. Anderson saw the defendants in the drug store. He called the police. When the police arrived, Mr. Anderson pointed out the defendants. This type of identification procedure is one of the fairest available.

In *People v Hallaway,* 389 Mich 265; 205 NW2d 451 (1973), we held it was impermissible to permit a police officer to relate the description of the

suspect given to him at the scene of the crime by an eyewitness who also testified at trial. The testimony was objected to as being hearsay. Since it was also a prior consistent statement and no prior inconsistent statement had been admitted, it was held inadmissible. In that case we were not dealing with the limited question of testimony of the circumstances of the extrajudicial identification procedure, but with the description that was given by the witness to a third party. The difference is crucial to the admissibility of the testimony.

In this case the officer testified to an event he had witnessed, the identification of the defendants by Mr. Anderson, the complaining witness. He was not testifying to the truth of the identification statement but to the fact that it was made and the circumstances surrounding it. Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.[6] Since the police officer was not testifying to prove that the defendants were the alleged assailants, but only to show that on February 27, 1974 he witnessed an event, the identification of the defendants by Mr. Anderson, his testimony was not hearsay.

Even though not objectionable as hearsay, such testimony is still within the category of prior consistent statements. There is danger in the use of prior consistent statements in relation to identification procedures. We noted the weakness of witness identification procedures in *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973). Keeping in mind the dangers inherent in piling on such testimony, we do see value in such testimony when limited to the circumstances surrounding the

---

[6] *People v Hallaway,* 389 Mich 265, 275; 205 NW2d 451 (1973).

event, and we find it is within the discretion of the
trial judge to allow or disallow such testimony.

In this case we find that the trial judge recog-
nized he had the discretion to allow or disallow the
testimony of the police officer and that he did not
abuse his discretion. First, the record does not
contain any suggestion that the identification pro-
cedure which took place on February 27, 1974 was
unfair, biased or a violation of the constitutional
rights of the defendants. Second, the record re-
veals that the trial judge limited the testimony of
the police officer to the circumstances of the identi-
fication procedure. Third, the trial judge did not
allow testimony concerning the identification pro-
cedure which was used at the preliminary exami-
nations. These factors show that the trial judge did
not abuse his discretion and therefore the testi-
mony of the police officer as to the February 27,
1974 identification was properly admitted.

## Conclusion

We find assault with intent to rob not armed,
MCLA 750.88; MSA 28.283 and attempted robbery
unarmed, MCLA 750.530; MSA 28.798 and MCLA
750.92; MSA 28.287 are not identical crimes. As-
sault with intent to rob not armed requires the use
of force and violence. Attempted robbery unarmed
may be committed without force and violence
simply by putting another in fear.

We find sufficient evidence in the record to
establish that defendants received a fair trial, even
though no instruction was given by the trial judge
on the requirement of a unanimous verdict, be-
cause in their "orientation" the jury had been
instructed on the necessity for a unanimous ver-

dict and the jury had in fact returned a unanimous verdict.

We find the instruction given by the trial judge on witness identification testimony substantially similar to that requested by defendant. We find no prejudice to the defendant due to the trial judge's failure to give the exact instruction requested.

We find the testimony of the complaining witness about calling the police and identifying the defendants to them in a pool hall the day after the crime is not hearsay and was properly admitted under the law expressed in *Londe.* The testimony of the police officer, a third party who witnessed the extrajudicial identification and testified only to the circumstances of the identification procedure, was properly admitted within the discretion of the trial judge.

We affirm.

COLEMAN and BLAIR MOODY, JR., JJ., concurred with WILLIAMS, J.

RYAN, J. *(concurring)*. I concur in the result reached by Justice WILLIAMS and agree with the disposition of the issues found in parts II, III, IV and V of his opinion. I write separately to express my different understanding regarding the admissibility of the testimony related to the prior, out-of-court identification of defendants.

## PRIOR IDENTIFICATION

### A. Testimony by the Identifier

I agree that the testimony of the witness Anderson concerning his prior identification of the defendants at the billiard hall was admissible at the time of this trial because of the precedential force

of *People v Londe*, 230 Mich 484; 203 NW 93
(1925).[1]

### B. Testimony of Third Party

At the time of the trial of this case, the admissibility of the testimony of Officer Stafford concerning Anderson's prior, extrajudicial identification of the defendants was governed by the rule of *People v Poe*, 388 Mich 611; 202 NW2d 320 (1972). My understanding of the rule in *Poe* compels the conclusion that the officer's testimony concerning the actual identification of defendants by Anderson at the billiard hall was inadmissible hearsay at the time of this trial.

In *Poe,* the Court held that it was error to admit police testimony that two witnesses who identified defendant at trial had made an earlier, positive extrajudicial identification of him. Error was also

[1] It is observed in passing, however, that correct and consistent application of the hearsay rule would have required the exclusion of the testimony of the complaining witness Kay in *Londe* and that given by Anderson here. Inadmissible hearsay traditionally has been defined as an extrajudicial statement which is offered for the purpose of proving the truth of the thing said. *People v Hallaway,* 389 Mich 265; 205 NW2d 451 (1973) (opinion of T. E. Brennan, J.). Both the Anderson testimony here in question and that of witness Kay in *Londe* fit that definition precisely and should have been rejected since, as Justice Brennan said in *Hallaway, supra:*

"While some writers have suggested that the hearsay rule need not be applied to the extrajudicial statements of a declarant, who later testifies as a witness, this Court has not recognized such an exception to the hearsay rule." 389 Mich 265, 275–276.

Not even, it might be added, when the statement is one of identification.

Nevertheless, the *Londe* Court, in single sentence conclusory language, admitted similar testimony apparently without even recognizing that it was hearsay and without any analysis, discussion or citation of authority to support its admissibility. Thus the *Londe* decision can only be characterized as one of those cases providing support for the admissibility of extrajudicial statements of identifications without any recognition of the hearsay problem inherent in such testimony. McCormick, Evidence (2d ed), § 251, p 603; 71 ALR2d 449.

found in the admission of police line-up sheets containing notations of what these witnesses had said at the time of the earlier identification. This evidence was found to be inadmissible hearsay because the testimony of the witnesses and the line-up sheets could have been offered and received for no other purpose than to prove that the witnesses had made prior consistent statements identifying Poe as the man who robbed the store in which they were employed, since the witnesses had not been impeached with regard to their prior identification of Poe.

Distinguishing its holding from that part of the *Londe* case which approved the admission of testimony of a third person concerning an extrajudicial identification by the robbery victim, the *Poe* Court said:

"*Londe* restricts the police officer's testimony to 'what took place' and under 'what circumstances the identification was made' and not, as here, the nature or quality of the identification." 388 Mich 611, 618.

This distinction is valid and important to an understanding of the admissibility of the police officer's testimony in the instant case. In my view, Justice WILLIAMS misapplies the distinction.

The testimony of a third person to an extrajudicial identification is admissible under the authority of *Poe* only insofar as such testimony is offered to prove the facts and circumstances surrounding the identification, *providing such facts and circumstances had independent relevance to the issues in the case.* Such facts and circumstances might tend to show whether the extrajudicial identification took place in a fair and unbiased setting, whether the lighting at the time of the identification was poor, whether an identifier who normally wears

glasses was wearing them at the time of the identification, whether in the case of a line-up other persons in the line-up were of a similar stature, weight, age and race as the identified party, and similar matters.

However, the essence of Officer Stafford's testimony in the instant case differs significantly from a description of such facts and circumstances.[2] The officer's testimony concerning the identification consisted of a repetition of Mr. Anderson's words and a description of his assertive conduct when

---

[2] The objectionable portions of the officer's testimony are found in the following colloquy between the prosecutor and the officer:

"*Q. (By Mr. Morgan):* After Mr. Booker Anderson came in, what happened next?

"*A. Mr. Anderson came into the pool hall and pointed out a gentleman, saying, 'That is one of them.'*

"*Q.* What happened next, after that?

"*A. Mr. Anderson pointed to one of the defendants.* My partner walked up behind him and asked him to come to the door.

"*Q.* What happened next?

"*A.* He was placed in custody.

"*Q.* What happened after that?

"*A. Mr. Anderson then pointed out the other gentleman, when we were outside. He said, 'The other one is inside.'*

"*Q.* Then what happened next?

"*A.* We also went and got that defendant.

"*Q.* And placed him under arrest also?

"*A.* We did, sir.

"*Q.* Officer Stafford, do you see either of those two persons who you arrested at the billiard hall in court this morning?

"*A.* I do, sir.

"*Q.* Would you point to them and indicate what they are wearing.

"*A. The first one pointed out to us is the gentleman wearing the black and green trousers.*

"*Mr. Morgan:* Indicating for the record, Mr. Reginald Gardner.

"*A. And sitting down at the checker table inside the pool hall is the gentleman in the green pullover sweater.*

"*Mr. Morgan:* Indicating for the record, Mr. Dwight Sanford.

"*Q. (By Mr. Morgan):* You say he was seated at the checker table?

"*A.* Yes. Mr. Gardner was playing pool, and Mr. Sanford was playing checkers." (Emphasis added.) Trial Transcript, pp 78–79.

The line-up sheets found to be inadmissible in *Poe* contained the notations of the witnesses' statements: "That's him with the trench coat on" and "That's him, that's him". 388 Mich 611, 617.

identifying the defendants and, as such, went beyond the limited range of the facts and circumstances of the identification setting. The admission of this testimony could only have the purpose of bolstering and fortifying Anderson's in-court and out-of-court identification of the defendants as his assailants, the truth of which had been damagingly challenged by defense counsel on cross-examination. Serving no other valid purpose, the testimony was inadmissible hearsay under the authority of *Poe.*

Nonetheless, as indicated by the adoption of MRE 801(d)(1), this Court is now persuaded that testimony of the kind found inadmissible in *Poe,* and the kind described in footnote 1, should be admitted under certain limited circumstances.

Recognizing that identification testimony has peculiar strengths and weaknesses, including those discussed by my Brother WILLIAMS in *Poe, supra,* the Court has subscribed to the view of most commentators on the law of evidence, as well as the Congress and the United States Supreme Court, that a special rule should be carved out for the admissibility of extrajudicial statements of identification. In adopting MRE 801(d)(1), the Court implicitly acknowledges, in addition, that the hearsay character and cumulative effect of the testimony of a third person to an out-of-court identification, as well as that given by the identifier himself, is not so inherently prejudicial that it must necessarily be excluded in all cases. Our new rule, like its Federal counterpart, FRE 801(d)(1)(C), allows the introduction of such testimony so long as the identifier testifies at trial and is subject to cross-examination concerning the statement of identification. It is thought that the possible prejudicial impact of the cumulative effect of such

testimony should be mitigated by the opportunity for cross-examination of the declarant which is made a condition for the admission of the testimony.

In the case before us, Anderson did testify at trial and was subject to cross-examination concerning the prior identification. In addition, the officer was subject to cross-examination concerning his testimony.[3] Consequently, defendants had the opportunity to fully explore not only the truth of the in-court and out-of-court identifications, but also the facts and circumstances of the identification, and could expose any unfairness in the setting, any hesitancy in the identification and any inconsistency in the testimony of these two witnesses.

I conclude therefore that the testimony of the police officer, while inadmissible at the time this case was tried, did not unfairly prejudice defendants and therefore does not warrant reversal. In addition, because such testimony would now be admissible under the new Michigan Rules of Evidence if a new trial were granted, ordering one would be an empty gesture. I therefore vote to affirm.

Fitzgerald, J., concurred with Ryan, J.

Kavanagh, C.J., and Levin, J. *(concurring)*. We concur in the affirmance of the convictions.

I

Assault with intent to rob and attempted robbery are distinct offenses. Assault of the intended victim is an element of the greater offense. The

---

[3] It is recognized that the *truth* of Anderson's extrajudicial identification of the defendants as his attackers cannot be probed and tested by the cross-examination of one who merely repeats the statements of identification. There are, of course, other values in such cross-examination.

lesser offense (attempted robbery) can be committed by a person who, having the requisite felonious intent, commits an overt act beyond mere preparation; the overt act can consist of conduct which stops short of an assault.

## II

This court's adoption of MRE 801(d)(1) resolves the question whether an identifying witness may repeat at trial his prior statement of identification.

The rule permits the introduction of such statements where the prior identification occurred at a time and in circumstances that make that identification more probative than in-court identification.

The new rule does not require a trial court to admit evidence of an earlier identification without regard to whether such evidence is within the policy which led to the adoption of the rule. If the police arrange the confrontation between the victim and the defendant, or if it occurs at a time closer to the trial than to the commission of the offense, the probative value of the prior identification evidence would be diminished and the trial court might refuse to admit such evidence.

In this case the police did not arrange the confrontation. It occurred by chance the day after the offense. It is clear that the victim's identification of the defendants was free of the taint of suggestive circumstances.

We also note that if the police had arranged the circumstances in which the identification was made the admissibility of the identifying witness's testimony would be subject to the decisions of this Court and of the United States Supreme Court concerning identification procedures.

MRE 801(d)(1) was not designed to permit testimony by persons other than the identifying wit-

ness.[1] The question whether other persons may testify regarding a prior identification and, if so, under what circumstances raises issues under the Confrontation Clause and has been the subject of considerable discussion.[2]

We do not address that question because the error in admitting the officer's testimony was harmless beyond a reasonable doubt. The victim's identification of the defendants was not disputed by any evidence offered by them; the officer's testimony, which in another case might tend to give added weight to out-of-court identification, did not tend to influence the jury's resolution of a disputed issue.

---

[1] Comment, *The Use of Prior Identification Evidence in Criminal Trials under the Federal Rules of Evidence,* 66 J Criminal L & Criminology 240, 250, fn 89 (1975). *See also* Robinson, *Civil and Criminal Evidence,* 23 Wayne L Rev 611, 651–652 (1977).

[2] Comment, 66 J Criminal L & Criminology, *supra;* 4 Weinstein, Evidence, ¶ 801(d)(1)(C)[01]. *See also,* Case Note, *Evidence: Extrajudicial Identification,* 8 UCLA L Rev 467 (1961); Anno: *Admissibility of evidence as to extrajudicial or pretrial identification of accused,* 71 ALR2d 449.