PEOPLE *v.* CIMINI

1. CRIMINAL LAW—DRAWING CHECK WITHOUT SUFFICIENT FUNDS—
   INTENT TO DEFRAUD.
   The intent to obtain money is not sufficient to establish the
   intent to defraud necessary to support a conviction of the
   crime of drawing a check without sufficient funds (MCLA
   § 750.131).

2. CRIMINAL LAW—DRAWING CHECK WITHOUT SUFFICIENT FUNDS—
   INTENT TO DEFRAUD—EXPECTATION OF PAYMENT.
   A reasonable expectation that a check will be paid upon presenta-
   tion negates a finding of the intent to defraud necessary to
   support a conviction of drawing a check without sufficient
   funds (MCLA § 750.131).

3. CRIMINAL LAW—DRAWING CHECK WITHOUT SUFFICIENT FUNDS—
   INTENT TO DEFRAUD.
   Evidence that defendant, who had been a customer in good
   standing of a bank for several years, deposited checks, totaling
   $7,000, drawn on an out-of-state bank, that the bank manager
   informed defendant that the checks were about to be dis-
   honored, and that the defendant said that he would attempt to
   rectify the situation and made a deposit in his account, that
   the checks were dishonored, creating an overdraft of $6,000,
   that defendant told the bank manager that he was still at-
   tempting to solve the problem, and the manager said that there
   was probably a problem with account numbers, that defendant
   drew a check for $155 on the bank with himself as drawer and
   payee, that the bank cashed the check, and that the bank's
   policy was to pay checks even if there were insufficient funds
   if it believed the depositor would later eliminate the over-
   draft was not sufficient to support a conviction of drawing a
   check without sufficient funds where the trial judge equated
   intent to defraud with intent to obtain money.

REFERENCES FOR POINTS IN HEADNOTES
[1]  32 Am Jur 2d, False Pretenses §§ 73–81.
[2, 3]  32 Am Jur 2d, False Pretenses § 74.

Appeal from Recorder's Court of Detroit, John R. Murphy, J. (Docket No. 8760.) Decided May 18, 1971.

Anthony Cimini was convicted of drawing a check without sufficient funds. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*Philip A. Gillis,* for defendant on rehearing.

Before: McGregor, P. J., and Quinn and O'Hara,* JJ.

## On Rehearing

McGregor, P. J.  Critical facts referred to in defendant's brief on rehearing, apparently not considered by the trial court, warrant further consideration of defendant's conviction for violation of MCLA § 750.131 (Stat Ann 1971 Cum Supp § 28-.326) (drawing a check without sufficient funds), reported in 25 Mich App 698.

At the time of the alleged offense, February 29, 1968, defendant was the sole stockholder and an officer of the Empire Cartage Company, a Michigan corporation, and under its by-laws, was empowered to draw checks on the bank checking account of the corporation. For six or seven years prior to February 29, 1968, the corporation had maintained a checking account at the same Detroit bank, and there

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

was testimony that both Mr. Cimini and the account were reportedly in good standing with the bank.

In the latter part of January, 1968, the defendant, on behalf of the Empire Cartage Company, deposited three checks, drawn on a New York bank, which totalled in excess of $7,000. Shortly thereafter, the bank manager learned that these checks were about to be dishonored by the New York bank (although the checks had not yet been returned), and came to the defendant's home on a Sunday to inform him of this. On the following day, February 5, the defendant came to the bank and informed the manager that he would attempt to rectify the situation; at this time, he deposited approximately $2,800. On February 6, the checks had been returned from New York and were posted against the account, creating an overdraft of approximately $6,000. The bank manager testified that he assumed that it was just a matter of a wrong account number or something of this nature as the reason why the checks had not cleared; Mr. Cimini agreed with him that it must have been some sort of mistake.

The bank manager testified that, two or three days later, he called the defendant, indicated that he wanted to see him, and inquired as to what had occurred relative to these checks. Mr. Cimini explained that he was still attempting to resolve the matter. No further testimony was introduced regarding any subsequent conversations or discussions between the defendant and any of the bank personnel. Although the matter of the dishonored checks had not been resolved and the account was still overdrawn, the defendant, on February 29, 1968, presented an Empire Cartage check, drawn on this Detroit bank, to a teller in the bank, with defendant as drawer and payee, in the amount of $155. At the time this check was presented, the teller did

not consult any records to determine the defendant's account balance.

Testimony was also introduced to the effect that it was the practice of the Detroit bank to pay checks drawn on certain accounts even when there were insufficient funds in such accounts to cover the checks, when it was thought that the depositor would later deposit sufficient monies to eliminate the overdraft.

The elements involved here were noted in 25 Mich App 698, 699.

Initially, the defendant argues, the trial judge made no finding of an intent to defraud, and if he did, he improperly applied the law. The judge's findings on this element are contained in the following language:

"Now, the intent to defraud, and I think it only necessary, the only necessary intent to defraud which is required under the statute, is an intent to obtain money. And I think that that intent was presented here at the time the defendant presented the check."

We express concern that the findings concerning this element are inconclusive, and we are unable to make a proper determination based on these findings. Furthermore, if, at the time of issuing the check, the defendant entertained a reasonable expectation that the check would be paid upon presentation, the element of intent to defraud would be lacking. *People* v. *Coats* (1969), 16 Mich App 652; see also Anno., 9 ALR3d 719. The court apparently did not fully consider this, although the trier of fact may well have found that a reasonable expectation of payment existed. On retrial, this defense should be considered by the trier of fact.

Reversed and remanded.

All concurred.