PEOPLE v SIMONDS

Docket No. 70772. Submitted April 5, 1984, at Detroit.—Decided June
     5, 1984. Leave to appeal applied for.
     Kenneth W. Simonds was convicted of first-degree murder,
     Wayne Circuit Court, Michael L. Stacey, J. His defense was
     insanity. Defendant appealed. *Held:*
          1. The trial court did not abuse its discretion in allowing the
     admission of evidence of other bad acts of defendant. The
     evidence bore on the issue of defendant's sanity and was not
     admitted to prove defendant's bad character.
          2. A reference by a prosecution witness to the fact that
     defendant had refused to undergo hypnosis or an interview
     under the influence of a truth drug did not require reversal.
     The court gave a cautionary instruction at the end of the trial
     and the reference was not solicited by the prosecutor and was
     brief.
          3. It was not reversible error for a trial court in a trial for
     first-degree murder to refuse to give an instruction which
     would have allowed the jury to convict the defendant of man-
     slaughter if it found that defendant's mental condition pre-
     cluded him from having the requisite intent for murder where
     the court adequately instructed on first- and second-degree
     murder, insanity and the verdict of guilty but mentally ill and
     the jury returned a verdict of guilty of first-degree murder.
          4. The defendant's due process rights were not violated by his
     case being assigned to a particular judge by a decision of the

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence § 298 *et seq.*
[2] 21A Am Jur 2d, Criminal Law § 950.
     29 Am Jur 2d, Evidence §§ 294, 831.7.
     Adequacy of defense counsel's representation of criminal client
          regarding hypnosis and truth tests. 9 ALR4th 354.
[3-5] 40 Am Jur 2d, Homicide §§ 7, 54 *et seq.*, 499, 525 *et seq.*
[5] 40 Am Jur 2d, Homicide §§ 10, 11.
     Modern status of law regarding cure of error, in instruction as to
          one offense, by conviction of higher or lesser offense. 15 ALR4th
          118.
[6] 46 Am Jur 2d, Judges § 26.

assignment clerk rather than by a blind draw as required in a rule of the court. The judge who was assigned was the only judge available for trial at the time of the assignment.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS — RULES OF EVIDENCE.

Evidence of similar bad acts of a defendant may be admitted where it has a bearing on the issue of defendant's sanity (MRE 404[b]).

2. CRIMINAL LAW — EVIDENCE — HYPNOSIS — REVERSIBLE ERROR.

Reference during trial to defendant's refusing to submit to hypnosis or a truth drug does not constitute reversible error where defendant sought and received a curative instruction, the reference came into evidence as an unresponsive answer to a question and there was only a single, brief reference to the refusal.

3. HOMICIDE — LESSER-INCLUDED OFFENSES — MURDER — MANSLAUGHTER.

Manslaughter may be a lesser but included offense to a charge of murder if evidence adduced at trial would support a verdict of manslaughter.

4. HOMICIDE — JURY INSTRUCTIONS — MANSLAUGHTER.

It is reversible error for a trial court to fail to instruct a jury on the elements of manslaughter where there was evidence to support such a theory and a proper request for such an instruction was made.

5. HOMICIDE — MURDER — MANSLAUGHTER — INTENT — JURY INSTRUCTIONS — HARMLESS ERROR.

It was not reversible error for a trial court in a trial for first-degree murder to refuse to give an instruction which would have allowed the jury to convict the defendant of manslaughter if it found that defendant's mental condition precluded him from having the requisite intent for murder where the court adequately instructed on first- and second-degree murder, insanity and the verdict of guilty but mentally ill and the jury returned a verdict of guilty of first-degree murder.

6. TRIAL — JUDGES — ASSIGNMENT OF JUDGES — DUE PROCESS.

A defendant's due process rights are not violated by his case being assigned to a particular judge by a decision of the assignment clerk rather than by a blind draw as required in a rule of the court where the judge who was assigned was the only judge available for trial at the time of the assignment.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Carolyn Schmidt,* Assistant Prosecuting Attorney, for the people.

*Neil H. Fink,* for defendant.

Before: J. H. GILLIS, P.J., and T. M. BURNS and N. J. KAUFMAN,* JJ.

PER CURIAM. Defendant was convicted, following a jury trial, of first-degree murder, contrary to MCL 750.316; MSA 28.548, and assault with intent to commit murder, contrary to MCL 750.83; MSA 28.278. He now appeals by right.

Defendant's conviction stems from a bizarre and tragic incident which occurred at a Revco Drug Store in Redford Township on March 17, 1982. At about 9 p.m. that night, defendant, who was employed as a security guard for Revco, attacked pharmacist Elise Rouhier, causing her death, and cashier Ann Ceane, leaving her seriously injured. The only contested issue at defendant's trial, where he presented an insanity defense, was his mental state at the time of the attack.

Ann Ceane testified that defendant arrived at the store shortly before closing time that evening, which was not unusual. He asked both women to come with him to the back of the store, and told Ms. Ceane to go into the women's restroom; believing this was part of some security procedure, she complied. After a few minutes, defendant asked her to come out of the restroom and had Ms. Rouhier go in. Defendant then reached towards Ms. Ceane; she got scared and knocked his hand

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment.

away. Defendant then began stabbing her with a
knife. From this point forward, defendant alter-
nated between viciously attacking the women and
apologizing to them for his actions. He told the
women to call an ambulance, but when Elise
Rouhier began to dial, he hung up the receiver
and then yanked the cord off the phone. He
grabbed Ms. Ceane, trying to suffocate her; then
he began smashing bottles over her head and
resumed attacking Ms. Rouhier with a knife. Fi-
nally, when the phone began ringing and someone
was heard at the door, defendant fled from the
store.

Elise Rouhier died as a result of five stab
wounds in her chest and six stab wounds in her
back, all inflicted by defendant.

Defendant appeared at his parents' home shortly
after the incident. Defendant's mother, wife, and
aunt testified to defendant's odd behavior at that
time. He laid on the floor, curled up, then began
running through the house and into walls, mum-
bling incoherently.

Members of defendant's family, and some of his
co-workers, testified generally to the effect that
defendant had never before exhibited bizarre be-
havior, and always acted normally.

Although defendant did not testify at trial, it
became clear through expert testimony that defen-
dant claimed to have no recollection whatsoever of
the incident. Two psychiatrists and a psychologist
all testified for the defense that defendant was
mentally ill or psychotic at the time of incident,
that he had not been dealing with his anger, that
he had a repressed hypercritical personality, and
that the incident was totally unlike anything de-
fendant had ever done before. Defense counsel
asked two of these experts whether their opinion

would change if they heard testimony from defendant's neighbors that suggested that defendant abused his wife. Both responded that it would not change their opinion. In rebuttal, the prosecutor called Steven and Kathleen Cicotte, defendant's next-door neighbors. Both testified that they frequently heard yelling and crying coming from defendant's house. They would hear a woman say things like, "Stop, you're hurting me", and then would hear a male laughing, presumably defendant.

Defendant now contends that reversible error occurred when the prosecutor elicited this testimony from the next-door neighbors, as it was inadmissible a) under MRE 404(b) because it was evidence of similar bad acts, b) under MRE 405 because it was evidence of specific instances of conduct to rebut the inference that defendant was nonviolent, and c) because it was irrelevant to the issue of sanity since the prosecutor's expert witness did not rely on the testimony.

We disagree. First of all, the concerns which underlie MRE 404(b) and the Supreme Court's decision in *People v Golochowicz,* 413 Mich 298; 319 NW2d 518 (1982), interpreting that rule, are not here implicated. The evidence was not introduced in an attempt to have the jury convict defendant of the crime charged on the basis of past misconduct; rather, the evidence was clearly introduced on the issue of defendant's sanity. As defendant recognizes, general similar-acts evidence analysis is inappropriate in an insanity defense setting. The Supreme Court in *People v Woody,* 380 Mich 332; 157 NW2d 201 (1968), ruled that testimony of prior antisocial conduct, ordinarily completely inadmissible, becomes material and admissible as bearing on the issue of defendant's

sanity. In an effort to discharge its burden of proving defendant's sanity, the prosecution is entitled to all rights of cross-examination of defense witnesses and to introduce rebuttal testimony by witnesses of its own. *Id.,* p 338. More recently, this Court faced a similar question and reiterated that evidence of a defendant's past conduct, not normally admissible, is admissible on the issue of sanity. *People v Cramer,* 97 Mich App 148, 161; 293 NW2d 744 (1980), *lv den* 411 Mich 862 (1981), and cases cited therein.

While recognizing the insanity exception to MRE 404(b), defendant suggests the exception be limited so that otherwise inadmissible similar-acts evidence is only admissible on the issue of insanity where a party's expert witness has relied on the testimony.

We do not find the limitation defendant advocates to be supported by the case law. The cases on which defendant relies, *People v Morris,* 92 Mich App 747; 285 NW2d 446 (1979), *lv den* 408 Mich 919 (1980), *People v Hammack,* 63 Mich App 87; 234 NW2d 415 (1975), and *People v Dimitris,* 115 Mich App 228; 320 NW2d 226 (1981), do not compel the conclusion he urges. Moreover, to the extent that the defense's expert witnesses considered defendant's past nonviolence as a factor in rendering an opinion as to defendant's sanity, evidence that defendant in fact exhibited violence in the past would be relevant to the trier of fact in determining whether to give credence to the testimony; it was admissible because it directly refuted one of the facts on which defendant's experts relied.

Finally, whether similar-acts evidence is admitted rests within the discretion of the trial court, and we do not find any abuse of discretion here.

*People v Golochowicz, supra; People v Claybon,*
124 Mich App 385; 335 NW2d 493 (1983).

In the course of testimony by the prosecution's
expert witness, Dr. Banks, Dr. Banks volunteered
that, in an effort to aid defendant's recall, Dr.
Banks wanted defendant to undergo hypnosis or
an interview under the influence of Amytol (a
"truth drug"), but that defendant's attorney re-
fused to let him participate in such a session.
Defense counsel immediately moved for a mistrial
on the basis of this reference by Dr. Banks. The
court denied the motion. Defendant requested a
curative instruction; the trial court agreed to give
it but gave it at the end of trial rather than
immediately as requested by defendant. Defendant
now argues that the reference by Dr. Banks so
prejudiced him that it warrants reversal of his
conviction.

We fail to see how this reference in any way
prejudiced defendant. Testimony based on hypno-
sis or "truth serum" sessions is inadmissible be-
cause it is unreliable and has not gained general
acceptance in the scientific community. *People v
Gonzales,* 108 Mich App 145; 310 NW2d 306 (1981),
*aff'd* 415 Mich 615; 329 NW2d 743 (1982); *People v
Cox,* 85 Mich App 314; 271 NW2d 216 (1978). See
also *People v Young,* 418 Mich 1; 340 NW2d 805
(1983), and cases cited therein. The trial judge
clearly indicated this to the jury in an instruction
at the end of the trial:

"During the course of the trial you've heard mention
of hypnosis. You should know that hypnosis is not a
reliable means of accurately restoring forgotten inci-
dents or repressed memory, and has not gained general
acceptance in the field of medicine and psychiatry. As a
result, any mention of hypnosis is improper, and must

be totally disregarded by you jurors in your deliberations."

Defendant argues that the mention that he had refused to undergo hypnosis suggested that he was suppressing the truth.

To the contrary, since courts do not hold hypnosis useful in discovering the truth, refusal to undergo hypnosis could not prejudice defendant in this manner. Moreover, if the reference to hypnosis left any doubts in the minds of the jury, the trial court's very good curative instruction should have removed any chance for prejudice to the defendant. That the instruction was not given until the end of trial would not necessarily prejudice defendant; if anything, it may have helped. Defendant misreads *People v Alvin Johnson,* 396 Mich 424; 240 NW2d 729 (1976), if he is implying that the Supreme Court there held that cautionary instructions can never cure a reference to polygraph. The Supreme Court in *Johnson* also cited *People v Paffhousen,* 20 Mich App 346; 174 NW2d 69 (1969), *lv den* 383 Mich 825 (1970), where this Court suggested that a trial court can take curative action rather than granting a mistrial where improper reference to polygraph is made.

In *People v Rocha,* 110 Mich App 1; 312 NW2d 657 (1981), *lv den* 411 Mich 915 (1981), this Court set forth a test to be utilized in determining whether a reference to a polygraph examination constitutes reversible error. Modifying that test to fit this case concerning reference to refusal to submit to hypnosis, we find that defendant here sought and received a curative instruction, the reference came into evidence as an unresponsive answer to a question, and there was only a single, brief reference to the hypnosis. We find no error.

Defendant also objects to the trial court's failure

to give the manslaughter instruction defendant requested. The instruction defendant proposed would have allowed the jury to find him guilty of manslaughter rather than murder if it found that defendant's mental condition precluded him from having the requisite intent for murder. The trial court offered to give the standard criminal jury instruction on manslaughter, CJI 16:4:02, in which provocation or passion is a necessary ingredient for voluntary manslaughter. Defendant refused this instruction, so no instruction on manslaughter was given. Defendant now urges that he was denied a fair trial because the court failed to give an instruction which would have allowed the jury to find him guilty of manslaughter rather than murder if it found that defendant's mental condition prevented him from having the requisite intent for murder.

Manslaughter, while not a necessarily included offense of murder, may well be an included offense if the evidence adduced at trial would support a verdict of manslaughter. *People v Van Wyck,* 402 Mich 266; 262 NW2d 638 (1978). It is reversible error for the trial court to fail to instruct on manslaughter where there is evidence to support such a theory and a proper request for such an instruction is made. *People v McIntosh,* 400 Mich 1; 252 NW2d 779 (1977); *People v Parney,* 98 Mich App 571, 586; 296 NW2d 568 (1979).

In this case, the evidence did not support the standard criminal jury instruction on manslaughter, since there was no evidence of either provocation or passion. It is thus understandable that defendant chose not to have that instruction given. Defendant's proposed instruction that diminished capacity or "partial insanity" may negate the intent element of murder and warrant a verdict of,

and instruction on, manslaughter is not well supported in Michigan law. No court has reversed a defendant's conviction for failure to give the type of instructions defendant requested in this case.

"It has been suggested that mental disorder not amounting to insanity might reduce the killing to manslaughter. Most cases, however, have rejected this position; they go only so far as to reduce the homicide from first-degree murder to second-degree murder, the theory being that the mental defect may serve to negative the killer's capacity to deliberate and premeditate but not his intent to kill * * *." LaFave & Scott, Criminal Law, § 77, p 585. (Footnotes omitted.)

The trial court in this case adequately instructed the jury on insanity and on the verdict of guilty but mentally ill. The jury did not agree to either of those theories. This Court has held it to be harmless error where an instruction on a lesser offense is not given but the jury reached a verdict on the offense charged rather than deciding on another lesser offense for which an instruction was given. *People v Daniel Meyers (On Remand),* 124 Mich App 148, 160; 335 NW2d 189 (1983), and cases cited therein; *People v Baker #2,* 103 Mich App 704; 304 NW2d 262 (1981) (no instruction on CSC IV, but as between instructions on CSC I and CSC III, conviction on CSC I), *lv den* 417 Mich 1093 (1983).

The Supreme Court cast some doubt on this principle in *People v Rochowiak,* 416 Mich 235; 330 NW2d 669 (1982), where the Court ruled that it was reversible error to instruct only on second-degree murder and involuntary manslaughter without also instructing on the lesser offense of reckless use of a firearm, even though the jury reached a verdict of second-degree murder rather

than manslaughter. The majority did, however, recognize that there are situations where failure to give lesser offense instructions would be harmless error. This case seems to present such a situation. In rejecting the possible verdict of second-degree murder and in rejecting possible guilty-but-mentally-ill verdicts for first- and second-degree murder, the jury clearly revealed that it did not believe defendant's mental condition prevented him from intending to kill with premeditation and deliberation. Based on the insanity defense and evidence at trial, the jury surely understood that the only real issue at trial was defendant's mental state at the time of the attack. Under these circumstances, it is clear that the trial court's refusal to give the requested manslaughter instruction could not have prejudiced defendant. *People v Marshall,* 115 Mich App 433; 320 NW2d 396 (1982).

In defendant's last issue defendant argues that his due process rights were violated when his case was reassigned to a judge by unilateral decision of the assignment clerk rather than through a blind draw, as required by Wayne County Circuit Court Rule 14.8, which provides:

"On the day of trial, cases shall be assigned by lot to a trial judge."

Defendant's case was originally scheduled to be heard by Judge Theodore Bohn. However, since Judge Bohn was still in the midst of another trial on the day defendant's trial was scheduled to begin, the assignment clerk assigned the case to Judge Michael Stacey.

Before trial began, defendant moved for compli-

ance with Wayne County Circuit Court Rule 14.8. After a hearing was held, Judge Stacey denied the motion. Judge Stacey offered to entertain a motion to have himself disqualified, but defense counsel stated that he did not want to so move. Defendant then filed an emergency application for leave to appeal to this Court, which this Court denied on December 14, 1982, (Docket no. 68339). His application for leave to appeal to the Supreme Court was also denied. 417 Mich 907 (1983). While that application was still pending, defendant filed a motion for a preliminary injunction in the United States District Court, seeking to restrain the court from reassigning his case to Judge Stacey. The Wayne County prosecutor filed a motion to intervene as of right, which was granted. Defendant's motion for a preliminary injunction was denied, and his complaint was dismissed, on February 22, 1983. (US District Court, Eastern District of Michigan, Southern Division, Civil No. 83-CV-0297-DT).

According to the affidavit of the assignment clerk which accompanied the answer to defendant's application for leave to appeal to this Court, after defendant's case was returned to the assignment clerk because Judge Bohn was unavailable, of the seven judges on the criminal call for that date, Judge Michael Stacey was the only judge available for trial. It is apparent that, whether by lot or by assignment, Judge Stacey was the only judge who could have heard defendant's case on that date; to draw any judge by lot would have been useless. Furthermore, defendant has shown no prejudice. The fact that the system has a potential for abuse is not grounds in this case for reversing defendant's conviction.

Affirmed.