PEOPLE v PEACH

Docket No. 101684. Submitted October 13, 1988, at Lansing. Decided
January 18, 1989. Leave to appeal applied for.

Helen J. Peach wrote a check to a grocery store for $101.80 and
received groceries. At the time, she knew that the checking
account was closed. She was charged with writing a no-account
check, however, at the preliminary examination the prosecutor
moved to amend the charge to false pretenses over $100. The
magistrate ruled that defendant could only be charged with
writing a no-account check. The prosecutor appealed the dis-
trict court's decision to the Bay Circuit Court. The circuit court,
William J. Caprathe, J., reversed the district court's decision
and ordered defendant bound over on charges of false pretenses
over $100. Following a jury trial, defendant was found guilty
but mentally ill of false pretenses over $100. Defendant ap-
pealed.

The Court of Appeals *held:*

1. Where, as here, the elements of the offenses of false
pretenses over $100 and writing a no-account check differ, the
prosecution retains charging discretion. The circuit court did
not err in reversing the district court's decision.

2. The trial court properly determined that, under the facts
of this case, defendant's alleged intent to make restitution was
not a defense to the charge.

3. Defendant's failure to use coupons which she allegedly had
in her possession when she wrote the check made such coupons
irrelevant to the issue of fair market value.

4. The trial court's instruction on fair market value was
sufficient. The trial court properly declined to instruct on false
pretenses of $100 or less since there was no evidence to support
such an instruction.

5. Evidence of defendant's 1972 forgery convictions was prop-

REFERENCES

Am Jur 2d, Expert and Opinion Evidence § 48; False Pretenses
§§ 12 *et seq.,* 77 *et seq.;* Prosecuting Attorneys §§ 23 *et seq.*

Reasonable expectation of payment as affecting offense under
"worthless check" statutes. 9 ALR3d 719.

Limitations on state prosecuting attorney's discretion to initiate
prosecution by indictment or by information. 44 ALR4th 401.

erly determined to be admissible because defendant's expert's opinion was based in part on that information. Such evidence was not substantially more prejudicial than probative.

6. The trial court erred in holding that evidence of defendant's 1977 involuntary manslaughter conviction was more probative than prejudicial. The trial court abused its discretion in admitting such evidence. However, such error was harmless.

Affirmed.

1. PROSECUTING ATTORNEYS — CHARGING DISCRETION.

A prosecutor has discretion when a defendant may be charged under two statutes, one general and the other specific, to charge under either statute where the statutes prohibit different crimes; statutes prohibit different crimes where an additional element is required to convict the defendant of one of the crimes, but not the other.

2. CRIMINAL LAW — FALSE PRETENSES OVER $100.

The elements of the felony of false pretenses over $100 are: (1) the defendant must have used a pretense or made a false statement relating to either past or then-existing facts or circumstances; (2) at the time he made or used the pretense, the defendant must have known it to be false; (3) at the time he made or used the pretense, the defendant must have intended to defraud or cheat someone; (4) the person alleged to have been defrauded must have relied on the false pretense made by the defendant; (5) in so relying, that person must have suffered the loss of some money or other valuable thing; and (6) the property which was taken must have had a fair market value which exceeded $100 at the time of the obtaining of the property; a pretense is any statement, device, trick, document, writing or object which is false (MCL 750.218; MSA 28.415).

3. FRAUD — NO-ACCOUNT CHECKS.

The elements of the felony of drawing a no-account check are: (1) the defendant signed a check in a specified amount to a specified person on a specified date; (2) that a check was drawn on a specified bank; (3) that on that specific date, the defendant had no account or credit with the specified bank; (4) that the check was presented for payment; and (5) that at the time of writing and delivering this check the defendant intended to defraud (MCL 750.131a[1]; MSA 28.326[1][1]).

4. CRIMINAL LAW — FALSE PRETENSES OVER $100 — RESTITUTION.

A defendant's claim that he intended to make restitution at the time that he wrote a no-account check is not a defense to a charge of false pretenses over $100 (MCL 750.218; MSA 28.415).

5. Evidence — Expert Witnesses — Facts and Data Underlying Opinions.

> The Rules of Evidence provide for the admission of facts or data upon which an expert witness bases an opinion or inference; an expert may be required on cross-examination to disclose the underlying facts or data; although relevant, such evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice (MRE 403,703, 705).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Martha G. Mettee,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan J. Smith*), for defendant on appeal.

Before: Beasley, P.J., and Gillis and W. G. Schma,* JJ.

Per Curiam. Following a jury trial, defendant was found guilty but mentally ill of false pretenses over $100, MCL 750.218; MSA 28.415. Defendant subsequently pled guilty to having had six prior felony convictions, MCL 769.12; MSA 28.1084. Defendant was sentenced to five years probation, the first year to be served in the county jail. Defendant was also ordered to make restitution, pay court costs and attend counseling. Defendant appeals as of right. We affirm.

Defendant first claims that the circuit court erred when it reversed the district court's decision that she could only be charged with drawing a check upon a bank without any bank account, MCL 750.131a(1); MSA 28.326(1)(1). We note that defendant was originally charged with writing a no-account check; however, at the preliminary examination, the prosecution moved to amend the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

charge to false pretenses over $100. The testimony at the preliminary examination showed that, on January 9, 1986, defendant wrote a $101.80 check to Ray's Food Fair, knowing that her account with Michigan National Bank was closed, and that she received groceries in exchange.

MCL 750.218; MSA 28.415 provides:

> Any person who, with intent to defraud or cheat, shall designedly, by color of any false token or writing or by any false or bogus check or other written, printed or engraved instrument . . . obtain from any person any money or personal property or the use of any instrument, facility or article or other valuable thing or service . . . if such . . . money, personal property, use of such instrument, facility or article, valuable thing, service, larger amount obtained or less amount disposed of, shall be of the value of $100.00 or less, shall be guilty of a misdemeanor; and if such . . . money, personal property, use of such instrument, facility or article, valuable thing, service, larger amount obtained or less amount disposed of shall be of the value of more than $100.00, such person shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years or by a fine of not more than $5,000.00.

The elements of false pretenses over $100 are: (1) the defendant must have used a pretense or made a false statement relating to either past or then-existing facts and circumstances; a pretense is any statement, device, trick, document, writing or object which is false; (2) at the time he made or used the pretense, the defendant must have known it to be false; (3) at the time he made or used the pretense, the defendant must have intended to defraud or cheat someone; (4) the person alleged to have been defrauded must have relied on the false pretense made by the defendant; (5) in so relying,

that person must have suffered the loss of some money or other valuable thing; and (6) the property which was taken must have had a fair market value which exceeded, that is, was over, $100 at the time of the obtaining of the property. See CJI 23:7:01.

MCL 750.131a(1); MSA 28.326(1)(1) provides:

A person shall not, with intent to defraud, make, draw, utter, or deliver any check, draft, or order for the payment of money, to apply on an account or otherwise, upon any bank or other depository, if at the time of making, drawing, uttering, or delivering the check, draft, or order he or she does not have an account in or credit with the bank or other depository for the payment of the check, draft, or order upon presentation. A person who violates this subsection is guilty of a felony, punishable by imprisonment for not more than 2 years, or by a fine of not more than $500.00, or both.

The elements of the felony of drawing a no-account check are: (1) the defendant signed a check in a specified amount to a specified person on a specified date; (2) that check was drawn on a specified bank; (3) that on that specified date, the defendant had no account or credit with the specified bank; (4) that the check was presented for payment; and (5) that at the time of writing and delivering this check the defendant intended to defraud. See CJI 29:2:01.

Where a defendant may be charged under two statutes, one general and the other specific, the prosecutor has discretion to charge under either statute if the statutes prohibit different crimes (i.e., an additional element is required to convict the defendant of one of the crimes, but not the other). See, e.g., *People v Ford,* 417 Mich 66; 331

NW2d 878 (1982); *People v Sanford,* 402 Mich 460; 265 NW2d 1 (1978). The prosecution argues that it has the discretion to charge defendant under either the no-account check statute or the false pretenses statute because the latter crime requires proof of reliance and receipt of property or money while the former does not. Defendant argues that she may only be charged with writing a no-account check because the Legislature intended to carve out a specific exception to the false pretenses statute by enacting the no-account check statute, which provides for a lesser penalty. Both parties rely on *People v LaRose,* 87 Mich App 298; 274 NW2d 45 (1978), lv den 406 Mich 943 (1979), and *People v Chappelle,* 114 Mich App 364; 319 NW2d 584 (1982), in support of their positions.

In *LaRose,* the defendant pled guilty to false pretenses over $100. The defendant admitted that he presented an insufficient-funds check to one bank in the amount of $150 which was drawn on another bank. The defendant appealed, claiming that there was an insufficient factual basis to support his conviction. This Court agreed. This Court noted the rule discussed in *Sanford, supra.* This Court then looked to *People v Vida,* 2 Mich App 409; 140 NW2d 559 (1966), aff'd 381 Mich 595; 166 NW2d 465 (1969), and *People v Niver,* 7 Mich App 652; 152 NW2d 714 (1967). Both *Vida* and *Niver* involved postdated checks. In *Vida,* this Court noted that a postdated check, being merely a promise to pay an obligation in the future, does not constitute grounds for a charge of false pretenses because the false pretense must relate to past or then-existing circumstances. The *Vida* panel then held that there was other evidence sufficient to support the defendant's conviction. Likewise, the *Niver* panel held the defendant's statement that he would transfer funds from his

other accounts to make good on a postdated busi-
ness check, if that account did not contain ade-
quate funds to cover the check, sufficient to sup-
port the defendant's false pretenses conviction.
That holding was apparently based on the defen-
dant's implied representation that he presently
had sufficient funds in his other accounts to pay
for his purchase when the evidence showed that he
did not. The *LaRose* panel distinguished *Vida* and
*Niver* by noting that those cases involved proof of
a false representation in addition to the presenta-
tion of an insufficient-funds check. The *LaRose*
panel then held that where the defendant's only
false pretense was giving an insufficient-funds
check, the insufficient-funds check statute, which
was specific and enacted after the false pretenses
statute, was an exception to the false pretenses
statute. The facts in *LaRose* do not reveal whether
the defendant had written a postdated check or
had received anything in exchange for the check
written.

In *Chappelle, supra,* the defendant was con-
victed of false pretenses over $100 for writing five
insufficient-funds checks to defraud businesses of
merchandise. The defendant appealed, claiming
that he should be charged under the insufficient-
funds check statute, citing *LaRose.* At first, the
*Chappelle* panel[1] distinguished *LaRose,* noting that
the defendant in *Chappelle* had used a false ad-
dress, driver's license and business cards in his
scheme. The *Chappelle* panel then noted that, in
any event, in order to convict a defendant of false
pretenses proof that the defendant had received
property or money from the victim in reliance on

---

[1] We note that Judge WALSH, who authored *People v LaRose,* 87
Mich App 298; 274 NW2d 45 (1978), lv den 406 Mich 943 (1979), was
on the *People v Chappelle,* 114 Mich App 364; 319 NW2d 584 (1982),
panel.

the false pretense was required; however, to convict a defendant of delivering an insufficient-funds check, no proof of reliance was required. Hence, the *Chappelle* panel concluded that the prosecutor had discretion to choose the charge.

At the preliminary examination in this case, the prosecution, relying on *Chappelle,* argued that defendant should be bound over on a false pretenses charge because that charge required proof that the victim had relied on the no-account check by giving defendant property or money while the no-account check charge did not require such proof. On the other hand, defendant relied on *LaRose,* which she noted was distinguished in *Chappelle,* and claimed that, absent evidence of false pretenses other than writing a no-account check, she could not be charged with false pretenses. In response, the prosecution argued that there was no proof that the *LaRose* defendant received anything in exchange for his check. The district court agreed with defendant and held that, absent other evidence of false pretenses, the Legislature intended to create an exception to the false pretenses statute when a defendant writes a no-account check. The district court further noted that, if the no-account check statute did not exist, defendant could properly be bound over on a false pretense charge.

The prosecutor appealed the district court's decision to the circuit court. At that time, the prosecutor argued that the *LaRose* analysis insofar as it involved the prosecutor's charging discretion was dicta because the only issue in *LaRose* was the sufficiency of the evidence to support the defendant's guilty plea. The prosecutor conceded that there was insufficient evidence to support LaRose's conviction for false pretenses because there was no proof that LaRose received anything for his check.

Defendant again pointed out that *Chappelle* distinguished *LaRose* and claimed that the remainder of *Chappelle* was dicta. The circuit court held that *LaRose* and *Chappelle* conflicted with one another, that *Chappelle* was consistent with our Supreme Court's decisions (presumably *Ford, supra,* and *Sanford, supra*) and, therefore, *Chappelle* was controlling. Hence, the circuit court reversed the district court's decision and ordered defendant bound over on charges of false pretenses over $100.

Defendant now claims that the circuit court erred in reversing the district court's decision because the district court could not have abused its discretion in following *LaRose* when it conflicted with *Chappelle.* Because the circuit court believed that *Chappelle* was consistent with our Supreme Court's decisions in *Ford* and *Sanford* and, therefore, controlling, it properly held that the district court abused its discretion when it failed to bind defendant over on the requested false pretenses over $100 charge when there was evidence presented on each element of the offense. See *People v Makela,* 147 Mich App 674; 383 NW2d 270 (1985).

Defendant also claims that writing a bad check is not a false statement, citing *Williams v United States,* 458 US 279; 102 S Ct 3088; 73 L Ed 2d 767 (1982). Defendant has raised this issue for the first time on appeal and, therefore, appellate review is precluded unless failure to consider the issue would result in manifest injustice. No manifest injustice occurred in this case because this state's false pretenses statute is broader than the statute at issue in *Williams.*

Defendant next argues that *LaRose* was correctly decided and that its analysis should be applied to the no-account check statute as well. Like the circuit court, we believe that the Su-

preme Court's decision in *Ford* demonstrates that *Chappelle* was correct when it held that, where the elements of the statutes regarding false pretenses and insufficient-funds checks differ, the prosecution retains charging discretion. We believe that a similar result follows in this case because, while the prosecutor has to prove that defendant received property or money from the victim who relied on the false pretense in order to prove false pretenses, he does not have to prove this element to prove a defendant guilty of writing a no-account check. See also *State v Roderick,* 85 Idaho 80; 375 P2d 1005 (1962).

Defendant next argues that she should have been allowed to present evidence that she intended to pay Ray's Food Fair when she received her Aid to Dependent Children check on January 15 or upon receipt of a five-day notice from the prosecutor's office about the no-account check. Unfortunately, for defendant, she was sentenced on a prior no-account check conviction on January 13 and her work-release was cancelled when she was fired from her job. Moreover, because the post office allegedly failed to forward defendant's mail to the jail, she never received the five-day notice. Defendant claimed that this testimony was relevant to show that she did not have the intent to defraud or cheat the store at the time she passed the check, an essential element of false pretenses. We agree with the trial court that defendant's claim is essentially a claim that she intended to make restitution. Under the facts of this case, restitution is not a defense. See *People v Oscar,* 105 Mich 704, 707; 63 NW 971 (1895), quoting *Commonwealth v Coe,* 115 Mass 481, 502-503 (1874); *People v Gill,* 8 Mich App 89, 92; 153 NW2d 678 (1967). Compare *People v Cimini,* 33 Mich App 461; 190 NW2d 323 (1971); *People v Coats,* 16 Mich App 652; 168

NW2d 463 (1969), lv den 382 Mich 755 (1969), involving insufficient-funds checks where the defendants may have had a reasonable expectation at the time they wrote the checks that the checks would be paid upon presentment to the drawee. Hence, the trial court properly instructed the jury: "An intent to later pay for the goods does not serve as a defense to these crimes."

Defendant further contends that the trial court abused its discretion when it held that her testimony that she had had seven or eight dollars in coupons, which she had been too nervous to use, was irrelevant on the issue of the fair market value of the groceries. We agree with the trial court that defendant's failure to use the coupons made them irrelevant to the fair market value issue. See *People v Johnson,* 133 Mich App 150, 154; 348 NW2d 716 (1984).

In a footnote in her brief on appeal, defendant also raises, for the first time, a claim that some of the items she purchased may have been taxable and, therefore, the value of the groceries could have been $100 or less. This issue is not preserved for appeal. *Williams v City of Cadillac,* 148 Mich App 786, 790; 384 NW2d 792 (1985). In any event, defendant herself admitted that she received only groceries from Ray's Food Fair.

In related claims, defendant contends that the trial court erred when it denied her request to instruct the jury on fair market value, CJI 22:1:01, and false pretenses under $100, CJI 23:7:01(9). Defendant points out that the third use note to the false pretenses instruction, CJI 23:7:01, states: "The Fair Market Value Test, CJI 22:1:01, *must be given.*" (Emphasis in original.) However, the use note to CJI 22:1:01 states: "If the value is not contested, this instruction can be waived by stipulation." While the parties in this case did not

stipulate to waiving the fair market value instruction, we note that the use of the standard criminal jury instructions is not mandatory. *People v Stinnett,* 163 Mich App 213, 215; 413 NW2d 711 (1987). Thus, we hold that the trial court's instruction that "the property which was taken must have had a fair market value which exceeded, that is, was over $100.00 at the time of obtaining the property" was sufficient to inform the jury of that element of the crime without a further definition of fair market value. Moreover, we believe that, where there was no evidence that the fair market value of the groceries was $100 or less, the trial court properly declined to give defendant's requested instruction on false pretenses of $100 or less. See *People v Ora Jones,* 395 Mich 379, 390; 236 NW2d 461 (1975), reh den 396 Mich 976 (1976).

Finally, defendant claims that the trial court abused its discretion when it allowed the prosecutor to question defendant's expert witness, who testified that she was legally insane, about his awareness of her 1972 convictions for forgery and 1977 conviction for involuntary manslaughter. Defendant also moved for a mistrial, claiming this evidence was substantially more prejudicial than probative. MRE 403. The trial court denied defendant's request, holding that it was proper for the prosecutor to question defendant's expert about the 1972 forgery convictions because those were expressly considered by him in reaching his opinion. The trial court also held that evidence of the 1977 involuntary manslaughter conviction was admissible because it was probative on the issue of insanity given that defendant's expert had testified that defendant's prior (1972) and current (1985-1986) check problems were the result of impulsivity. The court further held that the probative

value of the evidence outweighed its prejudicial impact because the involuntary manslaughter conviction was not similar to the false pretenses charge. The trial court gave the jury a limiting instruction on the use of these convictions.

Defendant had the following prior convictions: (1) two forgery convictions in Tennessee in 1972, (2) an involuntary manslaughter conviction in Tennessee in 1977, (3) an attempted false pretenses over $100 conviction in 1985, (4) a conviction in 1985 for three insufficient-funds checks within ten days, and (5) a no-account check conviction in 1985. Before trial, the court held that defendant could be impeached by evidence of her insufficient-funds checks conviction pursuant to MRE 609. The trial court specifically ruled that evidence of defendant's involuntary manslaughter conviction was not admissible for impeachment purposes under MRE 609 because it was more prejudicial than probative. The trial court also held that the prosecution could use evidence of defendant's no-account check conviction to prove her intent pursuant to MRE 404(b). We note that defendant's 1985 no-account checks conviction involved the same account as the present charges and defendant was awaiting sentence on that conviction when she committed the instant offense.

John Fossler, defendant's expert, testified that stress caused defendant, who was of limited intellectual ability, to impulsively return to her learned behavior of writing bad checks. Fossler concluded that defendant was mentally ill and that as a result of that illness she lacked a substantial capacity to appreciate the wrongfulness of her conduct or to conform it to the requirements of the law. Moreover, Fossler believed that defendant could not have formed the specific intent required to commit false pretenses.

On recross-examination, the prosecutor asked the questions now objected to, noting that in a letter to defense counsel Fossler had stated that he had reviewed defendant's supplemental information in reaching his decision. The Rules of Evidence provide for the admission of facts or data upon which an expert witness bases an opinion or inference. MRE 703 and 705. See also *People v James Robinson,* 417 Mich 661; 340 NW2d 631 (1983). In fact, on cross-examination, an expert may be required to disclose the underlying facts or data. MRE 705. Although relevant, such evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. See also *James Robinson, supra.* These rules apply even where the defendant pleads insanity. *James Robinson, supra.*

We agree with the trial court that evidence of defendant's 1972 forgery convictions was admissible because defendant's expert's opinion was based in part on that information. Furthermore, this evidence was not substantially more prejudicial than probative because evidence of defendant's past check writing habits could refute defendant's expert's testimony that defendant had acted impulsively in writing the 1985-1986 checks in a six-month period of time.

Like the trial court, we believe that evidence of the 1977 conviction for involuntary manslaughter was not inadmissible merely because defendant's expert, despite the statement contained in his letter, denied relying on it in reaching his opinion. *People v Simonds,* 135 Mich App 214, 219; 353 NW2d 483 (1984), lv den 424 Mich 895 (1986). Nonetheless, we disagree with the trial court's conclusion that the involuntary manslaughter conviction was more probative than prejudicial because it fell between the 1972 and 1985-1986 check

convictions and defendant's expert had testified that the 1972 convictions supported his theory that defendant acted impulsively in writing the instant check. Instead, we believe that the trial court abused its discretion when it admitted evidence of this conviction, MRE 403, but we hold the error harmless given the evidence presented, the evidence of other convictions properly admitted and the trial court's limiting instructions.

Affirmed.