PEOPLE v BAKER

Docket No. 176907. Submitted February 20, 1996, at Lansing. Decided May
      17, 1996, at 9:30 A.M. Leave to appeal sought.
    Richard A. Baker was convicted by a jury in the Genesee Circuit
      Court, Robert M. Ransom, J., of two counts of second-degree mur-
      der for causing the death of two occupants of an automobile that
      the defendant struck with his truck after failing to stop at a red
      light at an intersection while speeding and drunk. The defendant
      appealed, claiming that there was insufficient evidence of malice
      for convictions of second-degree murder.
        The Court of Appeals *held*:
        1. In order to be convicted of second-degree murder, a defendant
      must have intended to kill, to cause great bodily harm, or to do an
      act in wanton and wilful disregard of the likelihood that the natural
      tendency of such behavior is to cause death or great bodily harm.
      In this case, where only the last type of intent is at issue, evidence
      of reckless driving while drunk, without some other evidence of
      the defendant's state of mind, is insufficient to establish that the
      defendant intended to do an act in wanton and wilful disregard of
      the likelihood that the natural tendency of his behavior is to cause
      death or great bodily harm.
        2. The evidence against the defendant supports convictions of
      involuntary manslaughter, whose malice element requires proof
      that the defendant performed an act in wanton disregard that death
      or great bodily harm may ensue.
        Convictions and sentences vacated; case remanded for entry of
      judgment of convictions of involuntary manslaughter.
        SMOLENSKI, J., concurring in part and dissenting in part, stated that
      although the majority correctly recognized the distinctions between
      the malice elements of second-degree murder and involuntary man-
      slaughter, there was sufficient evidence in this case that the
      defendant had intended to do an act in wanton and wilful disregard
      of the likelihood that the natural tendency of his behavior is to
      cause death or great bodily harm. The jury verdict should be
      affirmed.

HOMICIDE — SECOND-DEGREE MURDER — INVOLUNTARY MANSLAUGHTER — MAL-
      ICE — RECKLESS DRIVING WHILE DRUNK.

Reckless driving while drunk, without some other evidence of state of mind, does not establish that the driver, in causing a fatal automobile accident, intended to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm such that the driver can be convicted of second-degree murder; evidence consisting solely of reckless driving while drunk supports a conviction of involuntary manslaughter, which requires for its malice element proof that the driver performed an act in wanton disregard that death or great bodily harm may ensue.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Arthur A. Busch*, Prosecuting Attorney, and *Donald A. Kuebler*, Chief, Appeals, Research, and Training.

*Sheehan & Couling, P.C.* (by *Terrance P. Sheehan*), and *Shaheen & Farah* (by *Joseph J. Farah*), for the defendant.

Before: NEFF, P.J., and SMOLENSKI and D. A. JOHNSTON,* JJ.

NEFF, P.J. Defendant was convicted of two counts of second-degree murder, MCL 750.317; MSA 28.549, and was sentenced to concurrent terms of fifteen to thirty years in prison, for killing two people while driving drunk. Defendant appeals his convictions and sentences as of right, and we vacate his convictions and remand for proceedings consistent with this opinion.

I

The essential facts of this case are not in dispute. On the night in question, defendant was observed driving his pickup truck at speeds between sixty and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

seventy miles per hour in a zone with a posted limit of thirty-five miles per hour. Defendant failed to stop for a red light and collided with a vehicle occupied by the victims. Both of the victims were pronounced dead on arrival at the local hospital. Defendant cannot remember the events of the evening because of the injuries he sustained as a result of the accident. Approximately three hours after the accident, defendant's blood-alcohol level was 0.18 percent.

II

On appeal, defendant claims that the trial court erred in submitting the charge of second-degree murder to the jury because insufficient evidence of malice was adduced at trial. We agree.

The issue raised by defendant has been resolved in the recent opinion of *People v Goecke*, 215 Mich App 623; 547 NW2d 338 (1996). *Goecke* is binding authority and we agree with its result. We find it important for purposes of clarity to expand on the concepts set forth in that opinion.

A

When reviewing a claim regarding the sufficiency of evidence, we examine the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find the essential elements of the crime proved beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Circumstantial evidence and reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of the offense, including the intent to kill. *Peo-*

*ple v Warren (After Remand)*, 200 Mich App 586, 588;
504 NW2d 907 (1993).

### B

In order to prove malice to support a conviction of
second-degree murder, the prosecutor must prove
that defendant possessed the

> mental state consisting of "the intent to kill, to cause great
> bodily harm, or to do an act in wanton and willful disregard
> of the likelihood that the natural tendency of such behavior
> is to cause death or great bodily harm." [*People v Miller*,
> 198 Mich App 494, 497; 499 NW2d 373 (1993), quoting *People v Vasquez*, 129 Mich App 691, 694; 341 NW2d 873
> (1983).]

Only the last part of this definition is at issue here
because of the lack of evidence that defendant
intended to kill or cause great bodily harm.

The corresponding definition of manslaughter con-
tains language similar to the definition of malice
applicable here:[1]

> However, where the theory is a lawful act carelessly per-
> formed, "the carelessness must have been gross, implying
> an indifference to consequences; . . . [i]t means wantonness
> and disregard of the consequences which *may* ensue, an
> indifference to the rights of others that is equivalent to a
> criminal intent. . . . Therefore gross negligence is criminal,
> and within limits supplies the place of affirmative criminal
> intent." [*People v Datema*, 448 Mich 585, 596; 533 NW2d 272
> (1995), quoting *People v Barnes*, 182 Mich 179, 198-199; 148
> NW 400 (1914) (emphasis added).]

---

[1] As with malice, involuntary manslaughter contains three definitions.
See *People v Datema*, 448 Mich 585, 596; 533 NW2d 272 (1995). We deal
only with the quoted definition because of the evidence presented at trial.

The distinction between the applicable definitions is subtle, but important; both speak, in part, of wanton disregard for the consequences of one's actions. Involuntary manslaughter and second-degree murder constitute two separate crimes, however, indicating a difference between them. That difference is in the scope of the consequence disregarded. For malice to exist to support a conviction of second-degree murder, the prosecution must show that the defendant performed an act in wanton and wilful disregard that the *natural tendency* of the act is to cause death or great bodily harm. In order to prove involuntary manslaughter, the prosecutor need only show that the defendant performed an act in wanton disregard that death or great bodily harm *may* ensue. In other words, malice, and therefore second-degree murder, requires a disregard for consequences almost certain to follow an action, while manslaughter merely requires disregard for possible consequences.

C

Applying the distinction to the facts of this case, the question becomes whether evidence of reckless driving while drunk can support a finding of malice. We find such evidence to be insufficient.

In the House Legislative Analysis, HB 4827 et al, August 14, 1991, discussing amendments of the drunk driving laws contained within MCL 257.625; MSA 9.2325, it is noted that the average drunk driver can drive drunk five thousand miles before being arrested, and that only about one in one thousand drunk drivers ever gets arrested. These figures, of course, include those drunk drivers who are arrested for causing fatal accidents.

Thus, it cannot be said that the natural tendency of driving drunk along with the reckless driving behavior that often goes with it, including causing accidents, is to cause death or great bodily harm. With that in mind, no reasonable inference can be drawn to support a finding of malice on the mere evidence of drunk driving. While we deplore drunk driving and acknowledge its harmful effects, we must conclude that evidence consisting solely of drunk driving and the attendant erratic driving cannot support a finding of malice.

Having reached this conclusion, we are mindful that drunk driving along with some other evidence of the defendant's state of mind can constitute sufficient evidence to support a finding of malice. See *Goecke, supra; Miller, supra.* Absent some additional proof, however, the mere evidence of drunk driving and the behavior incident thereto is not enough.

D

We acknowledge the case law from other states, some cited by the prosecution, holding that evidence of mere drunkenness supports a finding of malice. See statement of Justice LEVIN in *People v Brown,* 445 Mich 866, 869-871 (1994). We conclude, however, that those opinions reaching the opposite conclusion, such as *Essex v Virginia,* 228 Va 273; 322 SE2d 216 (1984), are better reasoned.[2]

---

[2] In *Essex,* the Virginia Supreme Court determined that the mere evidence of drunk driving did not constitute sufficient evidence of malice to support a conviction of second-degree murder in part on the basis of its finding that such evidence forced the jury to speculate regarding the defendant's true state of mind. The court noted that, as here, no evidence was adduced from which the jury could determine whether the defendant

E

Finally, we do not rely on MCL 257.625(4); MSA 9.2325(4), the so-called OUIL-causing-death statute, to support our conclusion in this case as suggested by Justice LEVIN's statement in *Brown, supra* at 866-867.

We conclude that this statute does not restrict prosecutors from charging a drunk driver with whatever homicide charge is warranted by the facts of the case because homicide is a crime different from OUIL causing death. See *People v Peach,* 174 Mich App 419; 437 NW2d 9 (1989). Thus, prosecutors are free to charge a defendant with both homicide and OUIL causing death. See *People v Price,* 214 Mich App 538; 543 NW2d 49 (1995). Indeed, on the basis of the legislative intent behind the OUIL-causing-death statute, we conclude that the Legislature intended to add to, rather than subtract from, the charging options available to prosecutors in drunk driving cases. See *People v Lardie,* 207 Mich App 615, 619-621; 525 NW2d 504 (1994), lv gtd 450 Mich 865 (1995).

F

For the reasons set forth above, we conclude that defendant's convictions must be vacated because the prosecutor failed to present sufficient evidence of malice to support defendant's convictions of second-degree murder. We remand for entry of a judgment of convictions of involuntary manslaughter. See *People v Hutner,* 209 Mich App 280; 530 NW2d 174 (1995).

---

embarked on his course of conduct wilfully and with a malicious purpose. *Id.* at 284. We agree with this rationale.

III

Because of our disposition of defendant's first issue, we need not determine whether his sentences were proportionate.

Defendant's convictions and sentences are vacated, and this matter is remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

D. A. JOHNSTON, J., concurred.

SMOLENSKI, J. (*concurring in part and dissenting in part*). I concur with the majority's distinction between murder and manslaughter. However, I dissent from the result reached by the majority. I believe that sufficient evidence of malice was presented in this case.

The collision in this case occurred at the intersection of Grand Traverse and Atherton Roads in Flint. Grand Traverse proceeds north and south while Atherton proceeds east and west. There is an I-475 exit that feeds traffic onto southbound Grand Traverse approximately three hundred to four hundred feet before Grand Traverse intersects with Atherton. Both Grand Traverse and Atherton are four-lane highways with a posted speed limit of thirty-five miles per hour. At the time of the collision, a double-headed traffic signal was located at the intersection that cycled red, yellow, and green for both roads. Road conditions at the time of the collision were dry and the traffic signals were operating normally.

The collision occurred on July 21, 1988, at approximately 11:30 P.M. when defendant's vehicle, which was traveling south on Grand Traverse at between sixty and seventy miles per hour, failed to stop at a red light on Grand Traverse and broadsided the victims'

vehicle, which was eastbound on Atherton. Alcohol was detected on defendant's breath at the scene of the collision. Approximately three hours after the collision, a blood sample was taken from defendant and a test indicated that defendant's blood alcohol level was 0.18 percent. Thus far, the facts are indistinguishable from the facts of *People v Goecke*, 215 Mich App 623, 624-625; 547 NW2d 338 (1996), and, under the majority's analysis, do not constitute sufficient evidence of malice.

However, an examination of all the facts leads me to conclude that this case does not simply involve evidence of drunk driving and the behavior incident thereto. Evidence was presented that defendant's residence was located on Grand Traverse approximately one mile south of the intersection. Thus, viewing this evidence in a light most favorable to the prosecution, the jury could have inferred that at the time of the collision defendant was heading home and, more importantly, that he was familiar with the area, including the existence of the intersection at Grand Traverse and Atherton and the traffic signal at that intersection.

Evidence was also presented concerning the extreme force of the collision. During the collision, defendant's vehicle rode up on top of the victims' vehicle. The victims' vehicle eventually overturned and came to rest on its top. The female victim was found lying on the road. One of the female victim's arms was completely severed and also found lying on the road. The responding police officer testified that he could not ascertain signs of life from either victim. Thus, viewing this evidence in a light most favorable to the prosecution, the jury could have inferred that

defendant had been traveling at a speed even greater than sixty to seventy miles per hour, as estimated by the witnesses.

Finally, I find critical to this case the testimony of Kerrie Kachel. At trial, Kachel testified that on the night of the collision she was driving east on Atherton when she proceeded through a green light at the intersection of Atherton and Grand Traverse. Kachel testified that her fiancee was following her in another car and that a vehicle was also traveling beside her vehicle. Kachel testified that when her vehicle was approximately three-quarters of the way through the intersection, she saw a pair of headlights coming toward her from a vehicle traveling on Grand Traverse. Kachel testified that the vehicle was traveling at a high rate of speed and was not stopping for the red light on Grand Traverse. Kachel testified that she estimated that the vehicle was traveling faster than sixty-five miles per hour on the basis of the humming of its tires, which she could hear even though her windows were up, and the suddenness with which the vehicle appeared to be coming through the intersection. Kachel testified that she was afraid that the vehicle would hit her. Kachel testified that she passed through the intersection and then heard a loud crash behind her. Kachel testified that the vehicle passed within three feet of her vehicle and between her vehicle and her fiancee's vehicle, which was following approximately one car length behind her. Viewing this evidence in a light most favorable to the prosecution, the jury could have found that defendant had been able to see both the red light on Grand Traverse and the vehicles in the middle of the intersection on Atherton. The jury could have further found that defend-

ant did not attempt to stop, but instead continued speeding through the intersection.

Thus, summarizing the evidence, defendant, while extremely intoxicated and driving at a high rate of speed in an area with which he was familiar, did not attempt to stop at a red light and drove into an intersection where crossing traffic was lawfully proceeding through the intersection on a green light. Accordingly, viewing the evidence in a light most favorable to the prosecution, I believe sufficient evidence was presented that defendant did act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior was to cause death or great bodily harm. The jury was appropriately instructed with regard to the element of malice in this case. I would affirm its verdict.